# IN THE SUPREME COURT OF IOWA

No. 11–1685

Filed May 9, 2014

**STATE OF IOWA,**

Appellee,

vs.

**BRIAN M. KENNEDY,**

Appellant.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Des Moines County, Michael G. Dieterich, District Associate Judge.

A defendant seeks further review of a court of appeals decision finding the district court's admission of certain evidence did not violate the Confrontation Clauses of the United States and Iowa Constitutions. **DECISION OF COURT OF APPEALS AND JUDGMENT OF DISTRICT COURT AFFIRMED.**

Richard A. Bartolomei of Bartolomei & Lange, P.L.C., Des Moines, for appellant.

Thomas J. Miller, Attorney General, Jean C. Pettinger, Assistant Attorney General, Patrick C. Jackson, County Attorney, Tyron T. Rogers and Justin C. Stonerook, Assistant County Attorneys, for appellee.

**WIGGINS, Justice.**

A defendant seeks further review of a court of appeals decision finding the district court's admission of a certified abstract of his driving record and affidavits of the mailing of suspension notices did not violate the Confrontation Clauses of the United States and Iowa Constitutions. On further review, we find the admission of the certified abstract of the defendant's driving record does not violate the Confrontation Clauses. We do find the district court's admission of the affidavits of the mailing of suspension notices violates the Confrontation Clauses. However, we also find the district court's admission of the affidavits was harmless error. Therefore, we affirm the decision of the court of appeals and the judgment of the district court.

## I. Background Facts and Proceedings.

On November 30, 2010, a police officer observed Brian M. Kennedy driving a vehicle in Danville. The police officer knew the State had previously revoked Kennedy's driver's license. The police officer initiated a traffic stop and gave Kennedy a citation. Subsequently, the State charged Kennedy with driving under revocation in violation of Iowa Code section 321J.21 (2011).

On the morning of trial, the State presented Kennedy's counsel with a proposed exhibit entitled "Certified Abstract of Driving Record." The exhibit was a fifteen-page document containing four separate certifications. The first two pages contained an abstract of Kennedy's driving history as it appeared in the Iowa Department of Transportation (IDOT) records. The director of the Office of Driver Services signed a certification stating the driving history was a true and accurate copy of the official record. The remaining thirteen pages contained three certifications from the manager for the Office of Driver Services attesting

to the process the IDOT uses to mail sanction notices and attesting the IDOT mailed sanction notices that corresponded to Kennedy's sanction numbers. Each of these certifications contained the official notices to Kennedy and the corresponding certificates of bulk mailing associated with each notice.

Prior to trial, Kennedy made a motion in limine to exclude the exhibit. His main challenge was the exhibit violated the Confrontation Clauses contained in the Sixth Amendment of the United States Constitution and article I, section 10 of the Iowa Constitution. The district court denied the motion and admitted the exhibit into evidence.

Kennedy waived his right to a jury trial. The district court found Kennedy guilty of driving under revocation in violation of Iowa Code section 321J.21. Kennedy appealed and we transferred the case to the court of appeals. The court of appeals affirmed the conviction. Kennedy applied for further review, which we granted.

## II. Standard of Review.

A defendant's right to confront witnesses in a criminal trial is found in the Sixth Amendment of the United States Constitution and article I, section 10 of the Iowa Constitution. We review constitutional claims, including Confrontation Clause claims, de novo. *State v. Shipley*, 757 N.W.2d 228, 231 (Iowa 2008).

## III. Preservation of Error.

The court of appeals held Kennedy did not preserve error on his claims involving the last thirteen pages of the exhibit. These thirteen pages contained the three certifications from the manager for the Office of Driver Services attesting to the process the IDOT uses to mail sanction notices and attesting the IDOT mailed the sanctions corresponding to Kennedy's sanction numbers.

The test to determine the sufficiency of an objection to preserve error "is whether the exception taken alerted the trial court to the error which is urged on appeal." *Dutcher v. Lewis*, 221 N.W.2d 755, 759 (Iowa 1974). In making his motion in limine, trial counsel specifically referred to the last thirteen pages of the exhibit as documents not part of what the IDOT or an attorney would consider to be an abstract of a person's driving record. We believe the district court understood the substance of trial counsel's objection and was able to determine whether the objection had merit as to each page of the exhibit. Accordingly, we find Kennedy preserved error on this issue.

**IV. Issue.**

We must decide if any part of the fifteen-page exhibit entitled "Certified Abstract of Driving Record" is admissible over Confrontation Clause objections.

**V. Elements the State Needs to Prove for Conviction of the Crime of Driving Under Revocation Under Iowa Code Section 321J.21.**

The Code defines driving under revocation as follows:

> A person whose driver's license or nonresident operating privilege has been suspended, denied, revoked, or barred due to a violation of this chapter and who drives a motor vehicle while the license or privilege is suspended, denied, revoked, or barred commits a serious misdemeanor.

Iowa Code § 321J.21(1). To prove Kennedy violated this statute, the State must prove Kennedy drove a motor vehicle while his license was revoked due to a violation of chapter 321J. *See id.* There is no question Kennedy was driving a motor vehicle at the time of his arrest. The questions in this appeal are when was Kennedy's license revoked under chapter 321J and does any admissible evidence in the record support the fact his license was revoked.

The State claims the IDOT revoked Kennedy's license three different times and each revocation remained in effect on November 30, the day the police officer initiated the traffic stop. The IDOT claims it first revoked Kennedy's license for "OWI test refusal." Iowa Code section 321J.9 governs revocation for an operating a motor vehicle while intoxicated (OWI) chemical test refusal. This section requires the IDOT, under certain conditions, to revoke a license when a driver refuses OWI chemical testing. *Id.* § 321J.9(1). It provides in relevant part as to the effective date of a revocation under this section:

> The effective date of revocation shall be ten days after the department has mailed notice of revocation to the person by first class mail, notwithstanding chapter 17A. The peace officer who requested or directed the administration of a chemical test may, on behalf of the department, serve immediate notice of intention to revoke and of revocation on a person who refuses to permit chemical testing. If the peace officer serves immediate notice, the peace officer shall take the Iowa license or permit of the driver, if any, and issue a temporary license effective for ten days.

*Id.* § 321J.9(4).

The IDOT also claims it revoked Kennedy's license for "OWI test failure." Iowa Code section 321J.12 governs revocation for an OWI chemical test failure. This section requires the IDOT, under certain conditions, to revoke a license when a driver fails an OWI chemical test. *Id.* § 321J.12(1). It provides as to the effective date of a revocation under this section as follows:

> The effective date of the revocation shall be ten days after the department has mailed notice of revocation to the person by first class mail, notwithstanding chapter 17A. The peace officer who requested or directed the administration of the chemical test may, on behalf of the department, serve immediate notice of revocation on a person whose test results indicated the presence of a controlled substance or other drug, or an alcohol concentration equal to or in excess

of the level prohibited by section 321J.2, or a combination of alcohol and another controlled substance or drug in violation of section 321J.2.

*Id.* § 321J.12(3).

Finally, the IDOT claims it revoked Kennedy's license for "operating while intoxicated." Iowa Code section 321J.4 governs revocation for OWI. This section requires the IDOT to revoke a license "[i]f a defendant is convicted of a violation of section 321J.2." *See id.* § 321J.4(1). In a criminal proceeding, a conviction is the judgment of conviction entered after sentencing. *See* Iowa R. Crim. P. 2.23(1), (3)(*d*). Consequently, the effective date of a revocation for operating while intoxicated is the date of conviction.

Therefore, to prove its case, the State must prove Kennedy drove his vehicle after the effective date of a revocation and before the IDOT reinstated his license.

**VI.  Confrontation Clauses.**

Kennedy challenges the introduction of the fifteen-page exhibit as a violation of the Confrontation Clauses under the Sixth Amendment of the United States Constitution and under article I, section 10 of the Iowa Constitution. The Confrontation Clause of the United States Constitution states the accused has the right "to be confronted with the witnesses against him." U.S. Const. amend. VI. Identically, the confrontation clause of the Iowa Constitution states the accused has the right "to be confronted with the witnesses against him." Iowa Const. art. I, § 10. "[W]e jealously protect this court's authority to follow an independent approach under our state constitution" for provisions of the Iowa Constitution that are the same or nearly identical to provisions in the United States Constitution. *State v. Pals*, 805 N.W.2d 767, 771 (Iowa 2011). However, in his appellate brief, Kennedy does not propose a

specific test we should apply under article I, section 10 of the Iowa Constitution. Rather he only cites caselaw analyzing the Confrontation Clause under the United States Constitution. Thus, under the facts of this case, we choose not to interpret the Iowa Constitution any differently from the United States Constitution. *See Shipley*, 757 N.W.2d at 234 ("Because Shipley has not contended that the Iowa Constitution should be interpreted differently than the Confrontation Clause in the Sixth Amendment to the United States Constitution, we construe the provisions identically.").

The Supreme Court interpreted the Confrontation Clause in *Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004). There, the Supreme Court recognized the Confrontation Clause was intended to protect against the principal evil of testimonial statements in the absence of the declarant. *See id.* at 50, 124 S. Ct. at 1363, 158 L. Ed. 2d at 192. Courts can only admit these testimonial statements in subsequent proceedings if the declarant is unavailable and there has been a prior opportunity for cross-examination. *Id.* at 59, 124 S. Ct. at 1369, 158 L. Ed. 2d at 197. Thus, the first inquiry in Confrontation Clause analysis is whether the evidence is testimonial.

Though the Supreme Court did not specifically identify a comprehensive definition of "testimonial," it provided some guidance in determining which evidence is testimonial. First, the Supreme Court held grand jury testimony, preliminary hearing testimony, former trial testimony, and statements resulting from police interrogation are testimonial. *Id.* at 68, 124 S. Ct. at 1374, 158 L. Ed. 2d at 203. Next, the Supreme Court identified several formulations for courts to use to identify testimonial evidence. *Id.* at 51–52, 124 S. Ct. at 1364, 158 L. Ed. 2d at 193. The relevant formulation here is whether the evidence

contains statements made in circumstances that would lead witnesses to objectively believe the statements might be used at trial. *See id.* at 51–52, 124 S. Ct. at 1364, 158 L. Ed. 2d at 193.

For our analysis, we will divide the fifteen-page exhibit into two types of documents. The first two pages of the exhibit are the certified abstract of Kennedy's driving record. We will consider these two pages separately from the last thirteen pages, which consist of three notices of revocation and an affidavit of mailing and certificate of bulk mailing attached to each notice. For clarity, we will identify the last thirteen pages as the affidavits of mailing.

**A. Certified Abstract of Kennedy's Driving Record.** We previously determined a certified abstract of a driving record was nontestimonial. *Shipley*, 757 N.W.2d at 238. Kennedy argues we should revisit the *Shipley* decision and overrule *Shipley* based on two subsequent Supreme Court decisions.

In *Shipley*, the defendant challenged the admission of a certified abstract of his driving record as violating the Confrontation Clauses of the United States and Iowa Constitutions. *Id.* at 234. The defendant argued the district court could only admit the certified abstract of driving record if the custodian of his driving records was available for cross-examination. *Id.* In determining otherwise, we identified two different confrontation issues with the certified abstract of driving record. *Id.* at 234–35. The first issue was whether the underlying public record required a live witness, and the second issue was whether the record could be authenticated without the custodian's testimony. *Id.*

We first recognized the underlying public record was not testimonial when we considered the purpose of the right of cross-examination. *Id.* at 237. The IDOT created the driving record prior to

the criminal prosecution and it would have existed even if there was not a subsequent criminal prosecution. *Id.* Thus, the primary evil *Crawford* sought to avoid, namely information gathered by an inquisitory investigation, did not exist. *Id.* at 238. We came to this conclusion based on a particularized analysis of the purpose of the Confrontation Clause and the nature of the information in the public record, rather than a broad view that all public records would be admissible. *Id.* at 237.

We next recognized the certification of authenticity of the public record was not testimonial. *Id.* at 239. In *Shipley,* we specifically compared a certification of a driving record to a certification of other forensics, and determined these certifications were sufficiently distinct. *Id.* Unlike forensic certificates, the driving record certification merely certified the authenticity of a copy of a preexisting document. *Id.* at 238–39. Further, access to a driving-record certification is not limited to governmental interrogation, but is available to anyone. *Id.* at 239. We concluded the certificate of authenticity did not violate the Confrontation Clauses of the United States and Iowa Constitutions. *Id.*

Kennedy argues *Shipley* is no longer good law because of two subsequent Supreme Court decisions: *Melendez-Diaz v. Massachusetts,* 557 U.S. 305, 129 S. Ct. 2527, 174 L. Ed. 2d 314 (2009), and *Bullcoming v. New Mexico,* 564 U.S. \_\_\_, 131 S. Ct. 2705, 180 L. Ed. 2d 610 (2011). Both of these cases consider whether forensic certificates of analysis violate the Confrontation Clause of the United States Constitution.

In *Melendez-Diaz,* the Supreme Court determined certificates of analysis stating several seized bags contained cocaine were testimonial and thus subject to the Confrontation Clause. 557 U.S. at 308–11, 129 S. Ct. at 2531–32, 174 L. Ed. 2d at 320–22. The certificates showed the

results of the forensic analysis, reported the weight of the bags, and indicated the bags contained cocaine. *Id.* at 308, 129 S. Ct. at 2531, 174 L. Ed. 2d at 320. The Supreme Court determined the certificates were testimonial for three reasons. First, the description of testimonial statements from *Crawford* included affidavits. *Id.* at 310, 129 S. Ct. at 2532, 174 L. Ed. 2d at 321. These certificates were affidavits because they were " 'declaration[s] of facts written down and sworn to by the declarant before an officer authorized to administer oaths.' " *Id.* at 310, 129 S. Ct. at 2532, 174 L. Ed. 2d at 321 (quoting *Black's Law Dictionary* 62 (8th ed. 2004)). Second, the court noted these documents were "functionally identical to live, in-court testimony." *Id.* at 310–11, 129 S. Ct. at 2532, 174 L. Ed. 2d at 321. Third, the sole purpose of the affidavits under state law was to provide evidence of the net weight, quality, and composition of the substances being tested, and the analysts were aware of the evidentiary purpose of the affidavits. *Id.* at 311, 129 S. Ct. at 2532, 174 L. Ed. 2d at 321.

The Supreme Court addressed whether the analysts themselves were witnesses providing testimony against the defendant. *Id.* at 313, 129 S. Ct. at 2533, 174 L. Ed. 2d at 323. The Supreme Court determined the analysts were witnesses because they provided testimony against the defendant that the substance he possessed was cocaine, and this fact was necessary for his conviction. *Id.* at 313, 129 S. Ct. at 2533, 174 L. Ed. 2d at 323.

The Supreme Court specifically differentiated between the affidavits in that case and a clerk's certificate authenticating an official record for use as evidence. *Id.* at 322–23, 129 S. Ct. at 2538–39, 174 L. Ed. 2d at 328–29. The Supreme Court stated "[a] clerk could by affidavit *authenticate* or provide a copy of an otherwise admissible record, but

could not do what the analysts did here: *create* a record for the sole purpose of providing evidence against a defendant." *Id.* at 322–23, 129 S. Ct. at 2539, 174 L. Ed. 2d at 329.

In *Bullcoming*, the Supreme Court determined a forensic laboratory report certifying the defendant's blood alcohol content violated the Confrontation Clause when an analyst who had not prepared the report testified. 564 U.S. at ___, 131 S. Ct. at 2709–10, 180 L. Ed. 2d at 616. The Supreme Court considered whether a substitute analyst who did not prepare the report could give proper testimony under the Confrontation Clause when the report itself was testimonial. *Id.* at ___, 131 S. Ct. at 2710, 180 L. Ed. 2d at 616. The Supreme Court reasoned the analyst could not be a proper substitute because this testimony could not convey what the actual analyst knew about the particular testing process employed. *Id.* at ___, 131 S. Ct. at 2715, 180 L. Ed. 2d at 622.

We hold the rulings in *Melendez-Diaz* and *Bullcoming* do not overrule or undermine our decision in *Shipley*. A certified abstract of a driving record is significantly different from a forensic report analyzing drugs or blood alcohol content. A certified abstract of a driving record encompasses the information contained in the IDOT records. That information existed well before the alleged criminal act. The compiling of the record does not require a scientist or technician to do any tests in order to report what already exists in the IDOT records. In other words, the certified abstract of a driving record is nothing more than a historical report of what is contained in the records of the IDOT.

Accordingly, the certified abstract of Kennedy's driving record, the first two pages of the exhibit, is not testimonial and the admission of these two pages did not violate the Confrontation Clauses of the United States or Iowa Constitutions.

**B. Affidavits of Mailing.** These documents require us to do a different analysis. We have not previously considered whether an affidavit of mailing and its attachments are testimonial. In *Shipley*, we recognized our task in that case was "limited to the consideration of the admissibility of a copy of an existing driving record kept by the custodian of records." 757 N.W.2d at 237 n.2.

The last thirteen pages of the exhibit contained three affidavits of mailing with attachments. Each affidavit addressed a separate revocation of Kennedy's driving privileges. The first affidavit addressed a notice of revocation mailed on May 21, 2010. The notice revoked Kennedy's license for refusing OWI chemical testing. It stated the effective date of the revocation was June 3, 2010. The notice also provided the revocation would last until June 2, 2012.

The second affidavit addressed a notice of revocation mailed on June 16, 2010. The notice revoked Kennedy's license for failing OWI chemical testing. It stated the effective date of the revocation was June 29, 2010. The notice also provided the revocation would last until June 28, 2011.

The third affidavit addressed a notice of revocation mailed on August 30, 2010. The notice revoked Kennedy's license for his OWI conviction. It stated the effective date of the revocation was July 30, 2010. The notice also provided the revocation would last until July 29, 2016.

Each affidavit of mailing contained the following language:

> I, Kathy McLear, being first duly sworn on oath, state as follows:

> That I am a Manager for the Office of Driver Services, Iowa Department of Transportation, an agency of the State of Iowa which generates and maintains all the official records of the

lowa Department of Transportation relating to driver licenses, license suspensions, revocations, cancellations, denials, disqualifications and barrment matters, and the mailing of sanction notices concerning the same. As part of my job duties with the Department, I know the process the Department uses to mail sanction notices to drivers.

That as a part of the regularly conducted and regularly recorded activities of the Office of Driver Services of the lowa Department of Transportation, the Department caused to be mailed by first class mail on or about [date of mailing notice], at the United States Postal Service, 1165 2nd Avenue, Des Moines, Iowa, and to driver(s) at each driver's last known address as shown in the records of the Department, the following sanction notices:

Sanction Notices Number(s): [identifying number on notice]

Proof of said mailing is set out in the attached United States Postal Service Certificate of Bulk Mailing, certified to by a knowledgeable employee of the United States Postal Service and prepared in the regular course of its business at its location at 1165 2nd Avenue, Des Moines, Iowa at the time of said mailing.

To determine whether these thirteen pages are testimonial, we must determine whether either the underlying public record or the certificate of authenticity contain statements made in circumstances that would lead a witness to objectively believe the statements might be used at trial. *See Crawford*, 541 U.S. at 51–52, 124 S. Ct. at 1364, 158 L. Ed. 2d at 193. At least two other states' highest courts have addressed this issue.

In Michigan, the Michigan Department of State (DOS) is responsible for mailing notices of revocation to drivers. *People v. Nunley*, 821 N.W.2d 642, 643 (Mich. 2012), *cert. denied*, 133 S. Ct. 667 (2012). In June 2009, the DOS sent a notice of revocation to the defendant. *Id.* at 643–44. Contemporaneous with sending the notice, the DOS prepared a certificate of mailing and maintained the certificate in its official records. *Id.* at 644. In September 2009, the police stopped the

defendant and charged him with driving while his license was revoked. *Id.* At trial, the court would not admit the certificate of mailing due to a Confrontation Clause objection under the United States Constitution. *Id.* The case reached the Supreme Court of Michigan. *See id.* at 647.

The Michigan court determined a certificate of mailing was not testimonial because the certificate of mailing was a business record created for administrative reasons. *Id.* at 653. The court recognized the certificate was an objective cataloging intended to show the agency performed its statutory responsibilities. *Id.* Further, the court pointed out the DOS created the certificate of mailing before any crime, and the mailing was contemporaneous with the notice. *Id.* Thus, the certificate did not violate the Confrontation Clause because "it was not made under circumstances that would lead an objective witness reasonably to believe that it would be available for use at a later trial." *Id.* at 654 (emphasis omitted).

In Massachusetts, the supreme judicial court considered whether a certificate of mailing violated the Confrontation Clause of the United States Constitution when the certificate was created exclusively for trial. *Commonwealth v. Parenteau*, 948 N.E.2d 883, 885–86, 891 (Mass. 2011). On May 30, 2009, an officer stopped the defendant's vehicle, and he arrested the defendant for operating a motor vehicle after his license had been revoked. *Id.* at 886–87. In the subsequent jury trial, the commonwealth introduced the certificate attesting a notice of license suspension or revocation was mailed to the defendant on May 2, 2007. *Id.* at 887. The registry prepared and dated the certificate on July 24, 2009. *Id.* at 887. The district court admitted the certificate into evidence. *Id.* The case reached the Supreme Judicial Court of Massachusetts. *Id.* at 885–86.

The Massachusetts court noted the certificate was dated two months after the criminal complaint was issued and clearly was made for use at the defendant's trial. *Id.* at 890. Further, the certificate did not merely authenticate and attest to the existence of a record, but made a factual representation that the agency mailed notice on a particular date. *Id.* Nor could the agency show it mailed the notice by proving the existence of a copy of the notice in the agency's filing system. *Id.*

The Michigan and Massachusetts cases contain the proper analysis under the Confrontation Clause. The Michigan court found the DOS made and kept the certificate of mailing well before any prosecution of the criminal charges. Thus, an affidavit of mailing prepared prior to criminal charges kept in the regular course of business as an administrative record does not violate the Confrontation Clause. On the other hand, the Massachusetts court found the registry prepared the certificate of mailing after the complaint and the commonwealth was using the factual representations in the certificate as testimony to prove when the mailing occurred. Thus, the Confrontation Clause prohibits the admission of an affidavit of mailing when the affidavit is both prepared after the criminal charges and the affidavit makes a factual representation intended as testimony.

We find the last thirteen pages contained in the exhibit at issue, the affidavits of mailing and attachments, squarely fit under the reasoning of the Massachusetts court. The affidavits of mailing were prepared after the State filed the complaint against Kennedy. All three affidavits are dated December 10, 2010, after Kennedy's traffic stop on November 30. The affidavits did not merely authenticate and attest to the existence of a record in the IDOT's possession, but made factual representations the IDOT mailed the notices on particular dates.

Applying the *Crawford* test, we find the IDOT created the affidavits under circumstances that would lead an objective witness to reasonably believe the affidavits would be available for use at a later trial. Therefore, the affidavits of mailing and attachments violated the Confrontation Clauses of the United States and Iowa Constitutions and were not admissible.

## VII. Harmless Error.

Reversal of a criminal conviction is not required for a federal constitutional error if the error is harmless. *See Chapman v. California,* 386 U.S. 18, 22, 87 S. Ct. 824, 827, 17 L. Ed. 2d 705, 709 (1967). The erroneous admission of evidence in violation of the Confrontation Clause is a constitutional error subject to a harmless-error analysis. *Delaware v. Van Arsdall,* 475 U.S. 673, 684, 106 S. Ct. 1431, 1438, 89 L. Ed. 2d 674, 686 (1986).

"Harmless-error review looks . . . to the basis on which 'the jury *actually rested* its verdict.' " *Sullivan v. Louisiana*, 508 U.S. 275, 279, 113 S. Ct. 2078, 2081, 124 L. Ed. 2d 182, 189 (1993) (quoting *Yates v. Evatt,* 500 U.S. 391, 404, 111 S. Ct. 1884, 1893, 114 L. Ed. 2d 432, 449 (1991), *overruled on other grounds by Estelle v. McGuire,* 502 U.S. 62, 72 n.4 (1991)). The inquiry

> is not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in *this* trial was surely unattributable to the error.

*Id.* at 279, 113 S. Ct. at 2081, 124 L. Ed. 2d at 189. "[A]ny time an appellate court conducts harmless-error review it necessarily engages in some speculation as to the jury's decisionmaking process; for in the end no judge can know for certain what factors led to the jury's verdict." *Id.* at 284, 113 S. Ct. at 2084, 124 L. Ed. 2d at 192. (Rehnquist, C.J., concurring).

The State must "prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained" for it to establish harmless error. *Chapman*, 386 U.S. at 24, 87 S. Ct. at 828, 17 L. Ed. 2d at 710. We are required to follow a two-step analysis to determine whether the State has met its burden. *Yates*, 500 U.S. at 404, 111 S. Ct. at 1893, 114 L. Ed. 2d at 449; *State v. Hensley*, 534 N.W.2d 379, 383 (Iowa 1995). The first step of the analysis requires us to ask what evidence the fact finder actually considered to reach its verdict. *Yates*, 500 U.S. at 404, 111 S. Ct. at 1893, 114 L. Ed. 2d at 449. We do not conduct a subjective inquiry into the fact finder's mind when doing so. *Id.* at 404, 111 S. Ct. at 1893, 114 L. Ed. 2d at 449.

In the second step of the analysis, we weigh the probative force of that evidence against the probative force of the erroneously admitted evidence standing alone. *Id.* at 404, 111 S. Ct. at 1893, 114 L. Ed. 2d at 449. Again, we cannot inquire subjectively into the fact finder's mind. *Id.* at 404–05, 111 S. Ct. at 1893, 114 L. Ed. 2d at 449. We are required to ask whether the force of the evidence "is so overwhelming as to leave it beyond a reasonable doubt that the verdict resting on that evidence would have been the same" without the erroneously admitted evidence. *Id.* at 405, 111 S. Ct. at 1893, 114 L. Ed. 2d at 449. "It is only when the effect of the incorrectly admitted evidence is comparatively minimal to this degree that it can be said . . . there is no reasonable possibility that such evidence might have contributed to the conviction." *Hensley*, 534 N.W.2d at 383 (citing *Yates*, 500 U.S. at 404–05, 111 S. Ct. at 1893–94, 114 L. Ed. 2d at 449, and *Chapman*, 386 U.S. at 24, 87 S. Ct. at 828, 17 L. Ed. 2d at 710).

Here, the district court considered the admissible certified abstract of Kennedy's driving record and the inadmissible affidavits of mailing and

attachments to find Kennedy's license was revoked at the time of his arrest. If we compare the probative force of the admissible certified abstract with the probative force of the inadmissible affidavits, the effect of the erroneously admitted evidence is comparatively minimal to such a degree that we can say there is no reasonable possibility such evidence might have contributed to the conviction.

We reach this conclusion because the admissible certified abstract contained the same information as the inadmissible affidavits. The certified abstract contained the effective date of the revocation for the OWI chemical testing refusal, the effective date of the revocation for the OWI chemical testing failure, and the effective date of the revocation for the OWI conviction. The certified abstract also indicated these revocations were in effect at the time Kennedy was arrested. The information contained in the admissible certified abstract of driving record was sufficient to convict Kennedy of driving under revocation in violation of Iowa Code section 321J.21 without the need for the district court to consider the inadmissible affidavits of mailing. Therefore, the inadmissible affidavits of mailing did not have an effect on the verdict and the district court's admission of the affidavits of mailing constituted harmless error.

**VIII. Disposition.**

The district court properly admitted the certified abstract of driving record over Kennedy's objections. Although the district court should not have admitted the affidavits of mailing and attachments over the Confrontation Clause objections, we find their admission into evidence to be harmless error. Therefore, we affirm the decision of the court of appeals and the judgment of the district court.

**DECISION OF COURT OF APPEALS AND JUDGMENT OF DISTRICT COURT AFFIRMED.**