WIGGINS, Justice (dissenting).
The majority holds the State is not required to prove it mailed notice to Deshaun Williams as an element of the offense of driving while barred. I dissent based upon my analysis of the statutory scheme and due process considerations.
I begin my analysis with State v. Green , 722 N.W.2d 650 (Iowa 2006). There we addressed the issue of whether the Iowa Department of Transportation (IDOT) established it had sent notice-"the condition precedent to agency action"-to the licensee prior to suspending her license. Id. at 651. We first examined the general notice requirement codified in Iowa Code section 321.16 (2003), which focuses on the sending *595 of notices. Id. at 651-52. This section provides,
When the department is authorized or required to give notice under this chapter or any other law regulating the operation of vehicles, unless a different method of giving notice is expressly prescribed, notice shall be given either by personal delivery to the person to be so notified or by personal service in the manner of original notice ... or by first class mail addressed to the person at the address shown in the records of the department ....
Id. (quoting Iowa Code § 321.16 ).
We then examined the suspension provision codified in section 321.210(1), which focuses on the receipt of notices. Id. at 652. This section authorizes the IDOT to suspend a driver's license after "the licensee ... received thirty days' advance notice of the effective date of the suspension." Id. (quoting Iowa Code § 321.210(1) ).
Additionally, we reasoned the saving language of section 321.16"clearly contemplates that the notice had been 'mailed by first class mail.' " Id. at 652. The saving language states,
A person's ... claim of failure to receive a notice of revocation, suspension, or bar mailed by first class mail to the person's last known address shall not be a defense to a charge of driving while suspended, revoked, denied, or barred.
Id. (quoting Iowa Code § 321.16 ).
We held proof of mailing notice of the suspension is an element of the offense of driving while suspended. See id. Because the IDOT failed to show either by affidavit or a certified mail receipt that it had sent notice to the defendant, although it had furnished to the district court a copy of a notice letter found in its internal files, we concluded "there was no proof that the notice was in fact mailed." Id.
To determine if the majority is correct, the majority must interpret Iowa Code sections 321.555 (2015), 321.556, and 321.560 in tandem with the administrative rules enacted by the IDOT. In interpreting a statute, we have stated,
The goal of statutory construction is to determine legislative intent. We determine legislative intent from the words chosen by the legislature, not what it should or might have said. Absent a statutory definition or an established meaning in the law, words in the statute are given their ordinary and common meaning by considering the context within which they are used. Under the guise of construction, an interpreting body may not extend, enlarge[,] or otherwise change the meaning of a statute.
Auen v. Alcoholic Beverages Div. , 679 N.W.2d 586, 590 (Iowa 2004) (citations omitted). Additionally, we construe statutes so they are consistent with each other. Sanon v. City of Pella , 865 N.W.2d 506, 514 (Iowa 2015). Finally, "we should not construe a statute to make any part of it superfluous." Petition of Chapman , 890 N.W.2d 853, 857 (Iowa 2017).
My review of the habitual offender statutory provisions and accompanying administrative rules, taken together, does not support the majority's premise that the effective date of the bar order begins from the actual date the IDOT enters its decision.
I begin with the Iowa Code. The IDOT conducts a habitual offender proceeding pursuant to section 321.556. See Iowa Code § 321.556. If the IDOT reviews a person's record and determines the person is a habitual offender as defined in section 321.555, "the department shall immediately notify the person in writing and afford the licensee an opportunity for a hearing." Id. § 321.556(1). Once it determines the person is a habitual offender, "the department *596 shall issue an order prohibiting the person from operating a motor vehicle on the highways of this state for the period specified in section 321.560." Id. § 321.556(4).
For a person barred as a habitual offender under section 321.555(1) or (2), the period of the bar begins "from the date of the final decision of the department under section 17A.19 or the date on which the district court upholds the final decision of the department, whichever occurs later ." Id. § 321.560(1)-(2) (emphasis added). For a person determined to be a habitual offender while his or her license is already revoked for being a habitual offender, the period of the revocation begins "on the date of the final decision of the department under section 17A.19 or the date on which the district court upholds the final decision of the department, whichever occurs later ." Id. § 321.560(4) (emphasis added).
The administrative rules require the IDOT to "send a notice of ... bar by first-class mail to the person's mailing address as shown on departmental records." Iowa Admin. Code r. 761-615.37(1). This rule is consistent with section 321.16. The rules also provide, "Unless otherwise specified by statute or rule, a suspension, revocation, disqualification or bar shall begin 30 days after the department's notice of suspension, revocation, disqualification or bar is served." Id. r. 761-615.36.
The thirty-day waiting period is important under the statutory scheme. This thirty-day waiting period is equal to the same time period allowed by the Iowa Code for a person to seek judicial review of a finding by the IDOT that a person is a habitual offender. See Iowa Code § 17A.19(3).
If a person seeks judicial review of the IDOT's final decision, the effective date of the person's bar begins "from ... the date on which the district court upholds the final decision of the department, whichever occurs later." Id. § 321.560(1), (2), (4). The majority ignores the language "whichever occurs later" in reaching its conclusion, thereby rendering the habitual offender provisions containing this language superfluous. See Rojas v. Pine Ridge Farms, L.L.C. , 779 N.W.2d 223, 231 (Iowa 2010) ("[T]he legislature included all parts of the statute for a purpose, so we will avoid reading the statute in a way that would make any portion of it redundant or irrelevant."). Section 321.560 automatically stays the final decision of the IDOT pending judicial review.
The only way the statutory scheme makes sense is if we give full effect to the habitual offender provisions as a whole and the administrative rules the IDOT relies on to implement the habitual offender provisions. See Iowa Nat. Res. Council v. Van Zee , 261 Iowa 1287, 1290, 158 N.W.2d 111, 114 (1968) ("It is a cardinal principle of statutory construction that the intent of the legislature is to be gleaned from the statute read as a whole[ ] and not from any section or portion thereof taken piecemeal."); see also State v. Conner , 292 N.W.2d 682, 686 (Iowa 1980) (applying the canon of statutory construction that "a construction resulting in unreasonableness as well as absurd consequences will be avoided" (quoting Janson v. Fulton , 162 N.W.2d 438, 442 (Iowa 1968) ) ).
To give effect to the words "whichever occurs later" in section 321.560, the thirty-day delay described in rule 761-615.36 is necessary to carry out the statutory scheme. If we ignore the thirty-day delay, under the reasoning of the majority, every bar of a habitual offender would begin literally on the actual date the IDOT enters its decision, regardless of when the IDOT mails its decision and regardless of due process concerns. The majority renders the phrase "from ... the date on which the district court upholds the final decision of the department, whichever occurs *597 later" superfluous and unnecessary because the actual date of the IDOT's final decision, without the thirty-day delay, would always occur before "the date on which the district court upholds the final decision."
If the person barred does not seek judicial review, the bar would begin on the thirtieth day from the date of the final decision. The thirty-day delay built into the start date of the bar gives a person an opportunity to ask for judicial review. It does not matter if the person actually avails him or herself of the opportunity. Thus, similar to a suspension under Green , the bar will not begin until a person has had the opportunity to exhaust all of his or her legal remedies, short of appeal to this court.
The majority finds section 321.560 of the Iowa Code supersedes rule 761-615.36 of the Iowa Administrative Code. This is wrong. I acknowledge section 321.560 also provides "from the date of the final decision of the department under section 17A.19." Iowa Code § 321.560(1), (2), (4). However, the majority fails to flesh out what "the date of the final decision" means. I examine an instructive case that employed a due-process analysis to conclude the Iowa State Board of Tax Review "issues" a decision when the board mails it, and the date of mailing starts the thirty-day appeals period. Purethane, Inc. v. Iowa State Bd. of Tax Review , 498 N.W.2d 706, 710 (Iowa 1993).
In Purethane, Inc. , we stated the Iowa Code provided for a thirty-day appeals period to file a protest from a sales and use tax assessment. Id. at 707-08. The board did not mail its November 28 decision until December 11 by certified mail. Id. at 708.
In resolving the question of when the board issued its final order to determine the appeal period, we stated,
In the absence of a file or entry system by which the public and parties to a controversy before the board of tax review can learn of the board's decision, due process requires the statutory appeal period begins to run when the board decision is officially made available as a public record.
....
... [T]he correct date which the board's order "issued" for purposes of determining the statutory appeal period is the date in which the order is put forth to the public and parties. Absent board rules [that] make decisions public by filing and entry, this date means the date the order is mailed by certified mail. Beginning the appeal period on the date of certified mailing does not violate due process.
Id. at 710 (emphasis added).
I agree with this analysis and apply it to Williams's case because the relevant habitual offender statutory provisions involve the date of the IDOT's final decision. Accordingly, the date of the IDOT's final decision is when the IDOT issues it by mailing notice of a licensee's barred status to the licensee. The date of mailing therefore commences the thirty-day period to file a petition for judicial review. My conclusion, which honors the principles of due process, shows that rule 761-615.36 is consistent with section 321.560.
Based on the foregoing, under the statutory scheme created by the habitual offender provisions and supplemented by the administrative rules, the IDOT must mail notice of the bar to the licensee. This construction makes procedures under the habitual offender provisions similar to those under the suspension provisions in Green . Therefore, the State must prove it *598 sent notice to Williams as an element of the offense of driving while barred.[2]
Additionally, I find State v. Cook , 565 N.W.2d 611 (Iowa 1997) (per curiam), inapplicable to the analysis. The majority reasoned Cook precludes a contrary conclusion because Cook did not identify proof of mailing notice as an element to the offense of driving while barred. In Cook , we held the district court did not err in giving the following jury instruction: "(1) [The defendant] operated a motor vehicle on August 15, 1995, and (2) on that date, his privilege to operate a motor vehicle was barred as an habitual offender." 565 N.W.2d at 613. However, Cook involved an ineffective-assistance-of-counsel claim in which the defendant argued his counsel should have objected to the trial information concerning his habitual offender status because it was prejudicial. Id. We held habitual offender status was an essential element of the crime and therefore the state was required to offer proof of such status. Id. at 615. In other words, Cook is not applicable to Williams's insufficiency-of-the-evidence claim because it simply does not address the necessary and required elements of proving the offense of driving while barred.
Finally, I would find State v. Kennedy , 846 N.W.2d 517 (Iowa 2014), also inapplicable to the analysis. Kennedy involved a license revocation, not a license bar as a habitual offender. In that case, the defendant raised a Confrontation Clause issue, claiming the state improperly introduced a certified abstract of his driving record. 846 N.W.2d at 521. The state had revoked the defendant's license three different times, once for OWI test refusal, once for OWI test failure, and once for OWI. Id. at 521-22. The necessity of mailing the revocation notice was not at issue in Kennedy . The only issue raised and decided by us was whether there was competent proof in the record that the defendant drove his vehicle after the effective date of the revocation and before the reinstatement of his license. Id. at 522. The defendant never raised the issue that proof of mailing was required.
The difference between Kennedy and the present case is that when the State revokes a license for OWI, the revocation takes effect immediately upon conviction. Id. On the other hand, when the State bars a habitual offender's license, mailing is an essential element of the offense because mailing triggers the appeal process and the effective date of the bar. Additionally, in Kennedy , the criminal conviction satisfies any due process concerns regarding the revocation. A proceeding to bar a person's license for being a habitual offender is consistent with our analysis in Green .
Based on the foregoing, I would hold the proper marshaling instruction consists of two elements: (1) operating a vehicle and (2) operating with a barred license. The second element has two subparts. First, the State must prove the defendant's license was barred on the date in question. Second, the State must present proof the IDOT properly mailed notice to the defendant. However, the State is not required to prove knowledge on the part of the defendant. State v. Carmer , 465 N.W.2d 303, 304 (Iowa Ct. App. 1990) (holding section 321.561 does not require knowledge as an element of the offense of driving while barred). Moreover, "[a] person's refusal to accept or a claim of failure to receive a *599 notice of ... bar mailed by first class mail to the person's last known address shall not be a defense to a charge of driving while ... barred." Iowa Code § 321.16.
It is undisputed the State did not introduce into evidence-either an affidavit of mailing or certified mail receipt-showing the IDOT properly mailed notice to Williams of the bar to his last known address. Thus, the State failed to prove beyond a reasonable doubt Williams was driving while barred. Based on the State's failure to prove the mailing of notice, I would not uphold the jury's verdict on the driving-while-barred conviction.
Appel, J., joins this dissent.

Under our prior decision, if the IDOT prepares a certificate of mailing contemporaneously with mailing and keeps the certificate in the regular course of business, it is nontestimonial, and its admissibility would not violate the Confrontation Clause. See State v. Kennedy , 846 N.W.2d 517, 526 (Iowa 2014). However, if the IDOT prepares a certificate of mailing for the purpose of trial, it is testimonial. See id.