# IN THE COURT OF APPEALS OF IOWA

No. 18-1060
Filed August 5, 2020

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**MARKUS EARL HARDING,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Black Hawk County, Linda L. Fangman, Judge.

Markus Harding appeals from his convictions of first-degree burglary, domestic abuse assault while using or displaying a dangerous weapon, false imprisonment, and fourth-degree theft.  **AFFIRMED.**

Rees Conrad Douglas, Sioux City, for appellant.

Thomas J. Miller, Attorney General, and Louis S. Sloven, Assistant Attorney General, for appellee.

Considered by Bower, C.J., Doyle, J., and Mahan, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2020).

**MAHAN, Senior Judge.**

Markus Harding appeals from his convictions of first-degree burglary, domestic abuse assault while using or displaying a dangerous weapon, false imprisonment, and fourth-degree theft. Harding contends the district court erred in applying the "forfeiture by wrongdoing" exception to the Confrontation Clause to allow admission of hearsay statements made by the victim. Upon our review, we affirm.

## I.  *Background Facts and Proceedings*

In December 2017, Harding was arrested following an incident involving K.J., during which it was alleged he broke into her home, assaulted her, held her captive, and accompanied her to fulfill his demand that she withdraw money from her bank account to give to him. Over the course of several months while Harding was in jail awaiting trial, Waterloo police learned through recorded jail calls that Harding had, directly and through third parties, made contact with K.J.[1] and threatened her not to come to court.

The State filed a notice of intent to rely on forfeiture by wrongdoing, and an evidentiary hearing was held in March 2018. The State presented the court with recordings of jail phone calls. On February 13, while another inmate was the middle man for a conversation between Harding and K.J., Harding repeatedly stated from the background, "Don't come to court at all," "Don't come"; on February 14, Harding told K.J., "I suggest you do move and not let no[body] know your address," "That way they can't serve you to come to court, so if they can't serve

---

[1] Following a separate hearing, the court concluded Harding's contact with K.J. was in violation of a no-contact order.

you, you ain't gotta go to court"; on February 18, another inmate and K.J. discussed whether the charges would be dropped if K.J. did not testify and that Harding would be out of jail by the weekend; on February 19—the day before trial was originally scheduled to start[2]—another inmate told K.J. that "he said to stay in the crib tonight . . . and he going to call you tomorrow when he get out"; and on February 20, another inmate told K.J. there had been a continuance and "he said stay out of Dodge."

Waterloo police officer and domestic assault response investigator Stacy Hesse testified she recognized K.J.'s voice on the calls, stating she had talked to K.J. "either by phone or in person . . . three to four times since December" 2017. Hesse testified she recognized Harding's voice because she had listened to "hundreds" of his calls "from the end of December through today." Hesse explained that during calls, in addition to threatening K.J., Harding "order[ed] people to make contact" with K.J. and retaliate against her, "instruct[ed] those people to pass on messages" to K.J., and offered money for affidavits. Hesse stated that K.J. was "unwilling" to provide her location to police because she "was tired of getting threatened." Hesse testified a subpoena was issued for K.J. on February 21, but police had been unable to locate her. Police believed K.J. had changed residences, and they did not "know where she live[d]."

Upon consideration of the parties' arguments, the district court concluded that "the forfeiture by wrongdoing has been proved and that the issue of confrontation has been waived." Specifically, the court stated:

---

[2] Trial was continued due to "because [K.J.] had reported that she had moved out of state."

> To suggest that Mr. Harding only did a little bit of wrongdoing so he keeps his confrontation rights doesn't sit with this court. There's no little bit of wrongdoing. He's contacted her. He's threatened her. He's told her not to come repeatedly to court. He's talked to her about moving out of town. And so it's clear that his goal in this matter was for her not to testify.

The court also acknowledged Harding's threats to K.J. through third parties, finding, "Clearly the threats are to get [K.J.] to do what he wants her to do"; "So there would be no surprise after doing—giving those threats, telling people to beat her up, telling people to flatten her tires, telling people to throw a brick through the window that when he says 'don't show up in court' she takes that seriously." And with regard to the efforts taken to serve K.J., the court found:

> The fact that there has been a subpoena out for [K.J.] since February 21, 2018, in which both the Black Hawk County Sheriff's Department as well as the Waterloo Police Department have been looking for her and that law enforcement has been unable to find her in over a month's time is significant to the Court. It's not as if nobody is looking or a subpoena wasn't issued or it was only issued last week.
> She no longer appears to reside at the residence. And it's been over a month, and law enforcement is not able to locate her, which is consistent with her conversation with Mr. Harding that she was intending to move out of the state so she would not have to come to court to testify as he directed.

The case proceeded to trial, during which K.J.'s hearsay statements about Harding's acts were admitted into evidence. The jury found Harding guilty on all counts. On appeal, Harding contends "[t]he court erred in finding forfeiture by wrongdoing" and "[b]ut for the finding of forfeiture by wrongdoing, most of K.J.'s statements during the trial would have been deemed testimonial requiring protection of the Sixth Amendment's Confrontation Clause."

## II. Forfeiture by Wrongdoing

"When a court finds that a defendant has procured a witness's unavailability, the defendant is precluded from asserting his constitutional right to confront the witnesses against him as a basis to prevent the admission of prior statements given by the witness. Hearsay objections are also forfeited." *State v. Hallum*, 606 N.W.2d 351, 357 (Iowa 2000); *accord State v. Campbell*, No. 10-0117, 2013 WL 4011071, at *5 (Iowa Ct. App. Aug. 7, 2013); *see also* Iowa R. Evid. 5.804(a)(5) (setting forth exceptions to the rule against hearsay when the declarant is unavailable as a witness). The determination of whether Harding procured K.J.'s unavailability at trial must be made in an evidentiary hearing in the absence of the jury, which took place before the presentation of evidence here. *See Hallum*, 606 N.W.2d at 355–56. At the hearing, the court received evidence that Harding communicated with K.J., directly and through third parties, on recorded jail phone calls. He instructed her to stay home to avoid being subpoenaed, change residences, and not to come to court. The court heard that despite K.J. being subpoenaed for over one month, police had been unable to locate her.

Upon our de novo review,[3] "[w]e agree with the district court that the statements on the recording[s] demonstrate [Harding] intended to prevent [K.J.] from testifying." *See Campbell*, 2013 WL 4011071, at *6 ("The comments include Campbell instructing A.S. to flee to a friend's house to avoid being subpoenaed, telling her she would be arrested and jailed if she did not flee, and instructing her that she should not testify and that if she was found in contempt of court that was

---

[3] "We review constitutional claims, including Confrontation Clause claims, de novo." *State v. Kennedy*, 846 N.W.2d 517, 520 (Iowa 2014).

nothing to worry about. He tells her to tell prosecutors she didn't want anything to do with the case. He tells her she should not have spoken with police. In the end, A.S. was served with a subpoena but did not appear in court. Clearly Campbell intended for her not to testify."); *see also State v. Gordon*, No. 15-1841, 2016 WL 6636792, at *2 (Iowa Ct. App. Nov. 9, 2016) ("While Gordon asserts there were no threats, promises, or instructions, the male caller told S.T. 'the best way is not to come' and told her to 'call the county and tell them you're moving.' The male caller also related to S.T. that other inmates had charges dropped when the victim refused to testify and responded approvingly when S.T. stated she did not want to testify. When viewed in the light most favorable to the State, we find the evidence sufficient to support the district court's finding Gordon intended to prevent the witness from testifying.").

In reaching this conclusion, we have considered the fact that Harding spoke to K.J. on February 22 and said, "Why don't you just come to court."[4] But as the district court observed, "by that time, Mr. Harding has been charged with violating the no contact order. He knows that he's been charged with violating the no contact order because he speaks about it during the conversation with [his brother on that day]." In that context, Harding's self-serving and isolated comment to K.J. on February 22 bolsters our conclusion that he intended K.J. not to appear in court.

---

[4] The conversation continued with K.J. responding, "If they don't subpoena me, I ain't coming to court," to which Harding said, "I don't know who this 'I' is that you're talking to," and K.J. corrected herself by stating, "She ain't coming to court. She already gone." As the district court noted, "It's clear he's trying to hide the conversation as if the law enforcement won't realize when he switches mid-statement from 'you' to 'she' that he was talking to [K.J.]" These comments evince that Harding knew that police were listening to his conversations, all the more reason to change his tune that K.J. should appear for court.

In sum, because Harding procured K.J.'s absence at trial, he forfeited hearsay objections based on her statements to other witnesses.  *See Hallum*, 606 N.W.2d at 357.  We affirm the court's ruling.

**AFFIRMED.**