# IN THE COURT OF APPEALS OF IOWA

No. 23-1445
Filed February 5, 2025

**DAMIEN LOVE,**
        Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
        Respondent-Appellee.
_____

        Appeal from the Iowa District Court for Dubuque County, Laura Parrish,

Judge.


        Damien Love appeals the district court's denial of his application for

postconviction relief.  **AFFIRMED.**




        Richard Hollis, Des Moines, for appellant.

        Brenna Bird, Attorney General, and Nicholas E. Siefert, Assistant Attorney

General, for appellee.


        Considered by Tabor, C.J., Schumacher, J., and Bower, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206

(2025).

**BOWER, Senior Judge.**

Damien Love appeals the district court's denial of his application for postconviction relief (PCR), raising claims of ineffective assistance of counsel, a sentencing challenge, and a claim of actual innocence. Upon our review, we affirm the court's denial of Love's application.

## I.    *Background Facts and Proceedings*

Love pled guilty to three counts of third-degree sexual abuse following interactions with teenage girls who had run away from a State residential treatment facility. In exchange for Love's plea, the State agreed to dismiss ten other charges in this case, as well as additional charges in other cases. Love requested immediate sentencing. The district court accepted the parties' agreed-upon sentencing recommendation and imposed a fifteen-year prison sentence, which included three concurrent ten-year prison sentences for the sexual-abuse counts in this case. Love did not file a direct appeal.

Love filed this PCR application a few months later, raising claims of actual innocence, newly-discovered evidence, ineffective-assistance-of-counsel, and illegal sentence. The State filed a motion for summary judgment, which the court denied. Following the PCR trial—at which the court heard testimony from Love and his plea counsel, Steven Drahozal—the district court denied Love's application. Love appeals.[1]

---

[1] Love requests us to "analyze [his] claim[s] pursuant to the provisions of both the Iowa and United States Constitutions," but he does not argue we "should construe the Iowa Constitution any differently than federal courts construe the United States Constitution." *See State v. White*, 9 N.W.3d 1, 12 (Iowa 2024) (noting "[w]here a party raises issues under the Iowa Constitution and the Federal Constitution, *but does not suggest a different standard be applied under the Iowa Constitution*, we

## II.    Standard of Review

"We ordinarily review PCR rulings for correction of errors at law." *Brooks v. State*, 975 N.W.2d 444, 445 (Iowa Ct. App. 2022). "However, when the applicant asserts claims of a constitutional nature, our review is de novo." *Ledezma v. State*, 626 N.W.2d 134, 141 (Iowa 2001).

## III.    Ineffective Assistance of Counsel

To establish a claim of ineffective assistance of counsel, Love "must demonstrate his plea counsel failed to perform an essential duty that resulted in prejudice." *Doss v. State*, 961 N.W.2d 701, 709 (Iowa 2021) (cleaned up). On the essential-duty prong, Love "must establish his counsel's performance fell below the standard demanded of a reasonably competent attorney." *Krogmann v. State*, 914 N.W.2d 293, 306 (Iowa 2018). On the prejudice prong, Love "must show that there is a reasonable probability that, but for counsel's errors, he . . . would not have pleaded guilty and would have insisted on going to trial." *Doss*, 961 N.W.2d at 709. We address his claims in turn.

### A.    Consequences of the Guilty Plea

Love claims his counsel failed to advise him "of the consequences of pleading guilty." To support his claim, Love points to his statements at the PCR trial:

> All I did was read over [the written guilty plea]. Didn't have any instructions. [Drahozal] didn't go over the plea with me . . . . It was just for me to read and sign. I didn't understand the part in—about the—I don't—I really didn't understand the plea. I just thought—I thought I was getting probation and I was going to go—come to

generally apply the federal standard"). Because Love "does not propose a specific test we should apply" to interpret his claims differently, we decline to do so. *State v. Kennedy*, 846 N.W.2d 517, 522 (Iowa 2014).

prison for—for the domestic charges and for—for the assault charge. I didn't understand the fact that I was going to have to be on probation for lifetime or anything like that. I didn't understand none of that.

Aside from this bald assertion, Love points to no other evidence in the record to support his claim. To the contrary, Drahozal testified he explained to Love "had he been convicted on everything and everything ran consecutively, he was looking at 198 and a half years." Drahozal stated he assured Love he was prepared to go to trial and ready to exploit any weaknesses in the State's case, but at the same time, it was his job to "make sure that [his clients] are aware of the maximum consequences of what they are facing." Drahozal recalled although Love "throughout the case would focus on what he wanted to hear," "[a]s we got a little bit closer to trial, [Love] seemed to become increase—increasingly anxious about the prospect of going to trial." Drahozal described the plea negotiation as follows:

> Mr. Love wanted me to make a plea offer pleading to contributing to the delinquency of a minor, asked for 90 days in jail, that would have been 30 days on each one of the minors, run consecutively.
> That plea offer of Mr. Love's was rejected by [the prosecutor]. So there were plea discussions throughout the case. I had a letter, I don't recall off the top of my head the final offer that [the prosecutor] made, but it did entail Mr. Love pleading guilty to offenses that would result in a 25-year prison sentence. Mr. Love rejected that. We were preparing to go to trial.
> Mr. Love contacted me and said that he would agree to a 15-year prison sentence. I looked at the charges, which is not uncommon, my clients will say I will do X number of years, I will then look at the charges and come up with something that equals that. Mr. Love agreed to 15 years, is what he wanted to do.
> I came up with a counteroffer for the charges that amounted to 15 years. I presented that to [the prosecutor], and [the prosecutor] accepted that. So the—the plea offer was actually Mr. Love's idea.[2]

---

[2] Drahozal also determined, "based on [his] investigation of the case"—which included evaluation of inconsistencies between the victims' initial statements to law

The written plea, initialed by Love, states the "[m]ax. term of incarceration" for each sexual-abuse charge is "10 years"; "[t]he terms of confinement . . . could run consecutively to each other"; and "[t]he terms of confinement . . . could run consecutively to sentences in other cases."  Moreover, at sentencing, the district court discussed the terms of Love's incarceration and other consequences Love faced upon his guilty plea.  At the outset of the hearing, the court stated, "The total years of imprisonment would therefore be 15 years."  Drahozal reiterated, "Mr. Love will be serving a 15-year sentence in prison . . . if the Court goes along with the plea negotiations.  In addition to that, Mr. Love would have to register as a sex offender and would also have the lifetime special sentence that goes along with that . . . ."  The court then asked Love if there was "anything [he] would like to say" "before the Court pronounces the disposition," to which Love responded, "I don't think I have anything else to say."  Upon our review, we determine there was no breach of an essential duty by counsel.  We affirm on this issue.

*B.      Failure to File a Motion in Arrest of Judgment or Notice of Appeal*

Love claims "he wished to  withdraw his plea and that he wanted to go to trial," but his counsel "failed to file such a motion."  He further claims he "requested that his attorney file an appeal but the attorney did not."  Love maintains he "suffered legal harm" from Drahozal's failures because "he could not withdraw his guilty plea despite being innocent of the crimes to which he pled guilty."  To support his claims, Love points to his testimony at the PCR trial:

---

enforcement and their subsequent sworn statements during depositions—"there was a factual basis for Mr. Love to plead to the three charges."

6

When I was sitting in county [jail], yes, I called him because I know I had something like 45 days to withdraw my motion—I mean, to withdraw my guilty plea. So I tried—I tried to contact him. I even wrote him a letter. I don't have a copy of the letter, but I usually have a copy of the letter.

But I—I called him and left a message on his voicemail that I wanted to withdraw my plea because I wanted to go to trial. I was going to take my chances at a trial because of the DNA evidence and everything else, and I had just—I was just at that point that I didn't know what to do so I didn't want—I just wanted to go to trial.

Again, Love offers no evidence to support his contentions aside from this bare assertion. And Drahozal's recollection of these topics directly contradicts Love's claims. Relating to a motion in arrest of judgment, Drahozal testified there were "[m]ultiple reasons" a motion in arrest of judgment was not filed:

Number one, Mr. Love waived his right to file a motion in arrest of judgment in the written plea, which was explained to him that—the deadlines for that. I don't recall whether the judge talked about that or not; but I did talk about that with him as we were preparing for the plea, if we sought immediate sentencing, if he waived the use of a PSI, that he would not have the time to file a motion in arrest of judgment.

What I normally explain to my clients about a motion in arrest of judgment, I say the typical definition is it's a legal reason judgment cannot be entered but, in a more practical sense, you don't understand what's going on, I didn't explain something to you, you were confused, I pushed you to do this.

Those are the typical examples of why clients file a motion in arrest of judgment. I did explain to him that he would be waiving that if he wanted to proceed to immediate sentencing. The form also did that.

It was—The second reason would be there was no legal basis to arrest judgment. I believe he was fully informed, it was voluntarily entered, and a factual basis.

And the third reason I did not file a motion in arrest of judgment is that Mr. Love never requested one. There was no legal basis for it, since he waived it and didn't request it, and I didn't see a need to file one.

Drahozal also noted Love initialed next to the paragraphs in his written guilty plea stating "if I wish to challenge this plea of guilty, I must do so by filing a Motion

in Arrest of Judgment at least five (5) days prior to the Court imposing sentence";
"I understand that by asking the Court to impose sentence immediately that I waive
my right to challenge the plea of guilty which I have hereby entered"; and "I
understand that if I am sentenced immediately, I lose my right to challenge any
defect in this plea or plea proceeding by motion in arrest of judgment and appeal
to a higher court . . . ." *But see State v. Hightower*, 8 N.W.3d 527, 536 (Iowa 2024)
(contrasting the advisory language when the defendant "did not request or receive
immediate sentencing").

Relating to filing a notice of appeal, Drahozal testified the written guilty plea
informed Love "he has to show good cause when he enters a guilty plea" and the
sentencing court "also informed him of the fact that he had to show good cause if
he was to appeal." Drahozal did not "recall any discussions [with Love] about
appealing." Drahozal testified, "Had Mr. Love in any way requested an appeal, I
would have immediately filed it." He recalled:

> After Mr. Love was sentenced, I did not hear from Mr. Love until, I
> believe, September 24th of 2021. I—I know it was some time in
> September. He sent me a letter from jail, about four pages with
> some—three additional pages. The 30 days since the judgment
> had—had passed. Regardless, that letter from Mr. Love in no way
> mentioned or requested an appeal.

Upon our review, we determine there was no breach of an essential duty by
counsel. We affirm on these issues.

C.      *Consideration of an Irrelevant Sentencing Factor*

Love claims the district court "did not give adequate reasons for imposing
consecutive sentences because the court considered an irrelevant sentencing

factor," namely, "Love's decision not [to] report the youths to authorities as runaways."

"[P]rocedural-defect challenges . . . must be raised through a timely appeal." *State v. Chawech*, ___ N.W.3d ___, ___, 2024 WL 5178629, at *5 (Iowa 2024); *State v. Canady*, 4 N.W.3d 661, 675–76 (Iowa 2024) (observing a challenge to a sentencing court's reliance on an improper consideration is a procedural-defect challenge). Moreover, this claim was neither raised before nor ruled upon by the district court in Love's PCR proceeding.

> Because we are error-correction courts, we generally don't decide issues for the first time. Rather, we usually decide only those issues that were (1) properly raised in the district court and (2) ruled on by the district court. We do this because if an issue was never presented to the district court to rule on, and if the district court did not in fact rule on it, we lack any "error" to correct.

*Chawech*, 2024 WL 5178629, at *4. Love's procedural-defect challenge to his sentence is not preserved for our review, so we do not consider it. *But see Sandoval v. State*, 975 N.W.2d 434, 438 (Iowa 2022) (exercising discretion to address the merits of the applicant's inherently-illegal challenge to his sentence raised for the first time on appeal).

### D. Actual Innocence

Finally, Love denies committing the crimes to which he pled guilty.[3] To support his contention, Love maintained, "I'm innocent and there is no factual

---

[3] The State argues Love failed to preserve error on this claim. "However, if the court's ruling indicates that the court considered the issue and necessarily ruled on it, even if the court's reasoning is incomplete or sparse, the issue has been preserved." *Durrell v. State*, No. 23-1624, 2024 WL 3517880, at *2 (Iowa Ct. App. July 24, 2024) (cleaned up). We observe the court primarily viewed the "DNA evidence" issue in relation to Love's claims of ineffective assistance of counsel.

evidence to show that I . . . did this crime and the DNA evidence exonerates me of this crime." Love "has a steep hill to climb as 'after pleading guilty, applicants claiming actual innocence must meet the clear and convincing standard.'" *Yarges v. State*, No. 23-0474, 2024 WL 1296965, at *6 (Iowa Ct. App. Mar. 27, 2024) (quoting *Schmidt v. State*, 909 N.W.2d 778, 797 (Iowa 2018)).

> [F]or an applicant to succeed on a freestanding actual-innocence claim, the applicant must show by clear and convincing evidence that, despite the evidence of guilt supporting the conviction, no reasonable fact finder could convict the applicant of the crimes for which the sentencing court found the applicant guilty in light of all the evidence . . . .

*Schmidt*, 909 N.W.2d at 797.

As the district court observed, "Love argued [in his underlying criminal case] that the lack of DNA evidence, or the lack of evidence of transmission of his [sexually transmitted infection], should exonerate him, but Drahozal identified weaknesses in his defense." Indeed, Drahozal testified he was "going to use the lack of DNA and the lack of a condom because the girls were unclear as to whether he used a condom." Drahozal further stated, "There was a sex toy that was found; and when I observed the photographs of the room where this took place, the room was in disarray, it had obviously not been cleaned, [one of the girls] had defecated on the floor, and the—and the—the fecal matter was still on the floor visible in the photographs." Despite some contradictions in the victims' depositions, Drahozal noted "[t]here was also evidence in the testimony . . . that they had observed [the others] actually have sex with Mr. Love." According to Drahozal:

---

Even so, the court addressed—and rejected—Love's "dispute[]" to his guilt. We determine Love's claim was preserved for our review.

Had we gone to trial, I would have exploited these inconsistencies and pointed them out to the jury, that the girls' stories changed from the time that they talked with the medical examiner— or the SANE [sexual assault nurse examiner], the time they talked with police, when their statements were made under oath. I would have absolutely pointed out the inconsistency and the changes in details.

My actual thinking was that was the best strategy or the best tactic to advance our strategy. From experience, I know that juries usually may not get hung up on details the way that I hope that they would. The other concern that I had is that there was testimony in the depositions that met the elements of the offense and the jury could make a factual finding—it was possible that the jury could find a factual basis for a lot of the charges that Mr. Love pled—excuse me, was accused of but were subsequently dismissed.

So I knew that it was a risk to put this in the hands of the jury, but I fully intended to exploit these inconsistencies; and I felt that the depositions, while not giving us an ironclad case, did strengthen Mr. Love's case.

Drahazol further stated, "In this case, we had multiple witnesses, professional witnesses, including a SANE, we had police officers, we had counselors, we had three victims, all of whom could testify." However, Drahozal testified:

I'm not going to have somebody plead guilty to something, and I tell my clients this all the time, I don't want you to plead guilty to something you didn't do. I can't allow you to plead guilty to something you didn't do. In fact, it's common for my clients to say, "I'll just plead to this just to get out of jail," or "I will just plead to this just to be done;" and I will tell them, "I'm not going to allow you to plead if you're telling me that [you did] not do this."

Love remained firm he wanted to plead guilty. Drahozal testified, "[T]here appeared, based on my investigation of the case, their previous statements to law enforcement, and their sworn statements, notwithstanding [one of the girls'] subsequent denial, there appeared to be a factual basis for that charge."

In evaluating this issue, we also consider the minutes of testimony assuming the witnesses would have testified as described. *See Fisher v. State,*

No. 23-0938, 2024 WL 4965862, at *3 (Iowa Ct. App. Dec. 4, 2024). In light of all the evidence, Love has not shown by clear and convincing evidence that "no reasonable fact finder could convict" him of three counts of sexual abuse in the third degree. *See Schmidt*, 909 N.W.2d at 797. For these reasons, Love's claim of actual innocence fails.

We affirm the district court's denial of Love's PCR application.

**AFFIRMED.**