# IN THE SUPREME COURT OF IOWA

No. 16–0894

Filed April 6, 2018

**STATE OF IOWA,**

    Appellee,

vs.

**DESHAUN MARVIN LAMAR WILLIAMS,**

    Appellant.

---

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Boone County, Paul G. Crawford, District Associate Judge.

The defendant seeks further review of a court of appeals decision affirming his conviction for driving while barred as a habitual offender, contending that proof of mailing of the notice of bar was an essential element of the offense. **DECISION OF COURT OF APPEALS AND JUDGMENT OF DISTRICT COURT AFFIRMED.**

Christopher A. Clausen of Clausen Law Office, Ames, for appellant.

Thomas J. Miller, Attorney General, Tyler J. Buller, Assistant Attorney General, Dan Kolacia, County Attorney, and Matthew Speers, Assistant County Attorney, for appellee.

**MANSFIELD, Justice.**

This case requires us to decide what the State must prove as the essential elements of the offense of driving while barred as a habitual offender. *See* Iowa Code § 321.561 (2015). Based on our reading of the statute, we conclude the State must prove the defendant (1) operated a motor vehicle (2) during the time period his or her license was revoked as a habitual offender under section 321.560. *See id.* While the question whether the Iowa Department of Transportation (IDOT) mailed a notice of revocation to the defendant may be *relevant* to whether the defendant's license was in fact revoked, it is not an actual element of the offense. Therefore, in a particular case, such as this one, the State may be able to prove the defendant operated a vehicle during the time period he or she was barred from driving without offering proof of mailing. For these reasons, on further review, we affirm the judgment of the district court, including the defendant's conviction for violating Iowa Code section 321.561, and affirm the decision of the court of appeals.

## I. Background Facts and Proceedings.

On December 12, 2015, at around 2:00 a.m., a motorist driving on Highway 30 between Ames and Boone observed a vehicle that was "all over the road." As she passed the vehicle, it swerved and almost hit her car. The vehicle continued to weave back and forth between the shoulder and the median. The motorist called 911 to report the erratic driving and, while on the phone with the dispatcher, followed the vehicle. She saw the vehicle almost go into the ditch beside the highway. The speed of the vehicle varied, as it traveled very slowly at times and well above the speed limit at others. The motorist relayed to the dispatcher the license plate number she was able to make out in the dark.

Eventually, the driver of the vehicle turned onto a gravel road, stopped, and shut the vehicle's lights off. The motorist remained on the scene within eyesight of the vehicle until law enforcement arrived about three or four minutes later. The motorist did not see anybody get in or out of the vehicle.

Sergeant Dallas Wingate of the Boone County Sheriff's Office responded to the call. He found a stopped vehicle with its lights turned off that matched the description the dispatcher had given him. The vehicle's engine was on. Defendant Deshaun Williams was the vehicle's driver.

Upon approaching the vehicle, Sergeant Wingate noticed a very strong odor of alcoholic beverage emanating from the vehicle. The driver slurred his speech, seemed confused in answering questions, appeared to lack coordination, and had glassy, watery eyes. After Sergeant Wingate asked for Williams's driver's license several times, Williams provided a nondriver identification card, which Sergeant Wingate ran through dispatch. Sergeant Wingate subsequently learned the State had barred Williams from driving.

Continuing his investigation, Sergeant Wingate had Williams step out of the vehicle so Sergeant Wingate could conduct field sobriety tests. When Williams exited the vehicle, Sergeant Wingate could tell Williams had vomited on himself at some point. Williams refused to participate in any of the tests. Based on Williams's revoked license and his refusal to perform the field sobriety tests, Sergeant Wingate placed him under arrest. Sergeant Wingate indicated to Williams that he was under arrest for driving while barred, to which Williams responded he knew he should not be driving.

Deputy Doug Twigg also arrived on the scene. According to Deputy Twigg, Williams's speech was "very slow" and "very slurred." Williams stumbled when getting out of the vehicle and appeared confused and irritated. Williams told Deputy Twigg he had dropped off nine people, although Deputy Twigg testified the vehicle was a sedan that would not hold nine passengers.

Both Sergeant Wingate and Deputy Twigg had functioning body cameras on their persons during their interactions with Williams. Williams is the only person seen on the body camera footage.

Deputy Twigg placed Williams in his squad car because Sergeant Wingate's car was a K-9 vehicle. At this point, Deputy Twigg could also smell the strong odor of alcoholic beverage coming from Williams and noticed Williams's bloodshot, watery eyes. Deputy Twigg transported Williams to the Boone County jail. During the ride, Williams told Deputy Twigg he knew he should not be driving.

At the jailhouse, Williams refused to provide a breath sample for chemical testing. Sergeant Wingate noticed that Williams's mood was capricious, switching between cooperative and boisterous or argumentative. Sergeant Wingate later testified mood swings are common in operating-while-intoxicated (OWI) cases because people impaired by alcohol have difficulty managing their emotions.

The State filed a trial information charging Williams with driving while barred, an aggravated misdemeanor, and OWI third offense as a habitual offender, a class "D" felony. *See* Iowa Code § 321.560; *id.* § 321J.2(2)(*c*); *id.* § 902.8. The case went to trial on March 29 and 30, 2016.

At the close of evidence, Williams moved for judgment of acquittal on the OWI charge, arguing the State did not present sufficient evidence

for a fact finder to conclude he was under the influence of alcohol. Williams also moved for judgment of acquittal on the driving-while-barred charge, contending the State failed to prove the IDOT mailed him notice of his license bar. The district court overruled Williams's motions. The jury returned verdicts finding Williams guilty of both OWI and driving while barred. In the second stage of the bifurcated proceeding, the jury then found that Williams had incurred the prior convictions alleged by the State. The court sentenced Williams to fifteen years in prison, subject to a three-year minimum, on the OWI third conviction as a habitual offender, and to two years in prison on the driving-while-barred-as-a-habitual-offender conviction, the two sentences to run concurrently. *See* Iowa Code §§ 902.8, .9(1)(*c*); *id.* § 903.1(2). Williams appealed. We transferred the case to our court of appeals.

The court of appeals, sitting en banc, affirmed Williams's convictions and sentence. As to both charges, it rejected Williams's arguments that there was insufficient evidence he was operating the vehicle. Regarding the OWI conviction, it found sufficient evidence from which a jury could conclude Williams was under the influence of alcohol. Finally, as to the driving-while-barred charge, a majority of that court rejected Williams's argument that the proof of mailing of the notice of barment was a required element of the offense. Four judges of that court dissented in part, finding that the State was required to prove mailing as part of the driving-while-barred crime and had failed to do so.

We granted Williams's application for further review.

**II. Issue We Will Consider on Appeal.**

Because this case is before us on further review, "we have the discretion to review all or some of the issues raised on appeal or in the application for further review." *State v. Clay,* 824 N.W.2d 488, 494 (Iowa

2012). In exercising our discretion, we choose only to review Williams's claim that the State is required to prove the IDOT mailed notice of the bar to him as an element of driving while barred. Accordingly, the court of appeals decision will stand as the final decision on the remaining issues.

### III. Scope of Review.

Williams's notice argument raises a question of statutory interpretation; thus, our review is for correction of errors at law. *See State v. Nall*, 894 N.W.2d 514, 517 (Iowa 2017).

### IV. Analysis.

Williams contends his conviction for driving while barred must be set aside because the State did not prove it mailed notice of revocation to him.[1] We begin with the language of the statute:

> It shall be unlawful for any person found to be a habitual offender to operate any motor vehicle in this state during the period of time specified in section 321.560 except for a habitual offender who has been granted a temporary restricted license pursuant to section 321.215, subsection 2.

Iowa Code § 321.561.

The legislature gets to define the elements of the crime. *State v. James*, 393 N.W.2d 465, 468 (Iowa 1986) ("Elements . . . are promulgated by the legislature because all Iowa crimes are statutory.").

---

[1]The State urges Williams did not preserve error because the marshaling instruction did not state mailing of notice was a required element and Williams did not object to that instruction in its final form. We disagree. Williams timely moved for judgment of acquittal based on the absence of proof of giving notice. When the motion was denied, Williams did not have to further object to the marshaling instruction. *See In re Estate of Workman*, 903 N.W.2d 170, 176 (Iowa 2017).

The State also urges Williams invited any error because his attorney started to object to the State's introduction into evidence of the affidavit of mailing before obtaining the State's agreement not to introduce it. This does not amount to invited error in our view. Proof of mailing can be made in other ways than through an affidavit of mailing. It is the State's job to prove up its case.

Reading Iowa Code section 321.561, it requires a person found to be a habitual offender to be operating a motor vehicle in Iowa during a specified period of time. Iowa Code § 321.561. It does not refer to notice as part of the offense. *See id.*

Even Iowa Code section 321.560, which is referenced in section 321.561, does not mention notice. It is entitled "Period of revocation— temporary restricted licenses," and states in part,

> 1. A license to operate a motor vehicle in this state shall not be issued to any person declared to be a habitual offender under section 321.555, subsection 1, for a period of not less than two years nor more than six years from the date of the final decision of the department under section 17A.19 or the date on which the district court upholds the final decision of the department, whichever occurs later.
>
> . . . .
>
> 2. A license to operate a motor vehicle in this state shall not be issued to any person declared to be a habitual offender under section 321.555, subsection 2, for a period of one year from the date of the final decision of the department under section 17A.19 or the date on which the district court upholds the final decision of the department, whichever occurs later.
>
> 3. The department shall adopt rules under chapter 17A that establish a point system which shall be used to determine the period for which a person who is declared to be a habitual offender under section 321.555, subsection 1, shall not be issued a license.
>
> 4. A person who is determined to be a habitual offender while the person's license is already revoked for being a habitual offender under section 321.555 shall not be issued a license to operate a motor vehicle in this state for a period of not less than two years nor more than six years. The revocation period may commence either on the date of the final decision of the department under section 17A.19 or the date on which the district court upholds the final decision of the department, whichever occurs later, or on the date the previous revocation expires.

Iowa Code § 321.561. Again, the statute refers only to periods of time. *See id.*

Here, the State offered ample proof that Williams was operating a motor vehicle during the relevant period of time. Exhibit 7, the certified abstract of driving record, was admitted at trial without objection. On page 2, this abstract states that Williams was barred from driving for the time period 10/2/12 to 10/2/16. Further evidence showed that Williams's driving on Highway 30 and his subsequent arrest occurred on December 12, 2015.

In addition, the officers who interacted with Williams testified as follows:

Sergeant Wingate:

Q. Did you tell the defendant that he was being arrested for driving while barred? A. I believe I did, yeah.

Q. And do you remember his response? A. I think he indicated that he knew he shouldn't be driving at that point.

Deputy Twigg:

Q. Do you recall hearing if the defendant was barred from driving? A. Yes. Yes, he was barred from driving.

Q. Did the defendant acknowledge that? A. He did.

Based on this evidence, the district court properly denied Williams's motion for judgment of acquittal on his conviction for driving while barred.

Prior caselaw supports the conclusion that proof of mailing is not an essential element of the offense of driving while barred as a habitual offender. *State v. Boleyn* defined the offense as follows: "The offense of driving while barred is committed when a person convicted as a habitual offender operates a motor vehicle during the period their license is barred." 547 N.W.2d 202, 206 (Iowa 1996). In *State v. Cook*, we affirmed the giving of the following jury instruction: "[T]he State must prove that (1) Cook operated a motor vehicle on August 15, 1995, and (2) on that

date, his privilege to operate a motor vehicle was barred as an habitual offender." 565 N.W.2d 611, 613 (Iowa 1997) (per curiam). In *State v. Snyder*, we upheld the defendant's conviction because "there was substantial evidence that Snyder was operating . . . a motor vehicle . . . during a time period he was prohibited from doing so as a result of being convicted as a habitual offender." 634 N.W.2d 613, 618 (Iowa 2001). Notably, in *Snyder*, as in the case at hand, the defendant's driving record was admitted into evidence and reflected the revocation. *Id.* at 614. We also made note of the defendant's verbal admission to the officer regarding the status of his license. *Id.*

Further, in *State v. Wise*, the court of appeals upheld a conviction under Iowa Code section 321.561 over a claim of ineffective assistance of counsel. 697 N.W.2d 489, 492 (Iowa Ct. App. 2005). In doing so, the court observed, "The crime Mr. Wise was charged with has only two elements: he (1) was operating a motor vehicle (2) while his license was barred." *Id.*

It is true that none of these cases specifically addressed the question whether the giving of notice was an element of the crime. But each time the court recited the elements of the Iowa Code section 321.561 offense, it did so without mentioning notice as an element.

Our recent holding in *State v. Kennedy* also applies here. 846 N.W.2d 517 (Iowa 2014). In *Kennedy*, the defendant's license was revoked after his conviction for OWI. *Id.* at 522. We said,

> To prove Kennedy violated this statute, the State must prove Kennedy drove a motor vehicle while his license was revoked due to a violation of chapter 321J. There is no question Kennedy was driving a motor vehicle at the time of his arrest. The questions in this appeal are when was Kennedy's license revoked under chapter 321J and does any admissible evidence in the record support the fact his license was revoked.

*Id.* at 521 (citation omitted). We noted that the crime of driving while license revoked under section 321J.21 has only two elements: that the defendant drove a vehicle and that the defendant's license was revoked at the time. *Id.*

We then concluded that given these elements, affidavits of mailing were *not* necessary to prove Kennedy violated the statute:

> The certified abstract contained the effective date of the revocation for the OWI chemical testing refusal, the effective date of the revocation for the OWI chemical testing failure, and the effective date of the revocation for the OWI conviction. The certified abstract also indicated these revocations were in effect at the time Kennedy was arrested. The information contained in the admissible certified abstract of driving record was sufficient to convict Kennedy of driving under revocation in violation of Iowa Code section 321J.21 *without the need for the district court to consider the inadmissible affidavits of mailing. Therefore, the inadmissible affidavits of mailing did not have an effect on the verdict and the district court's admission of the affidavits of mailing constituted harmless error.*

*Id.* at 528 (emphasis added).

Although *Kennedy* involved a revocation for an OWI offense under Iowa Code section 321J.21, as opposed to Williams's habitual offender revocation under section 321.560, *Kennedy*'s reasoning applies here. In *Kennedy*, an abstract of the defendant's driving record was sufficient to prove that he was operating a vehicle during the time period after the effective date of revocation. *Id.* Here, the State introduced a similar abstract plus Williams's own admissions. Because we found in *Kennedy* that an affidavit of mailing was unnecessary, it follows that it was not needed here.

Williams makes a plausible argument that the IDOT had to mail notice of bar to him as *one of the steps in the barment process.* The IDOT conducts habitual offender proceedings pursuant to section 321.556.

*See* Iowa Code § 321.556. Once the IDOT determines a person is a habitual offender after initial notice and hearing, "the department shall issue an order prohibiting the person from operating a motor vehicle on the highways of this state for the period specified in section 321.560." *Id.* § 321.556(4). The statute itself says nothing about mailing this order.

Still, IDOT administrative rules—but not the Iowa Code—require the IDOT to "send a notice of denial, cancellation, suspension, revocation, disqualification or bar by first-class mail to the person's mailing address as shown on departmental records." Iowa Admin. Code r. 761—615.37(1). In addition, the rules—but not the Code—provide, "Unless otherwise specified by statute or rule, a suspension, revocation, disqualification or bar shall begin 30 days after the department's notice of suspension, revocation, disqualification or bar is served." *Id.* r. 761—615.36.

Iowa Code section 321.560 does not have a thirty-day waiting period for the bar to take effect. It refers to "the date of the final decision of the [IDOT] under section 17A.19"—*not* to thirty days after the final decision—as being the commencement of the revocation period. *See* Iowa Code § 321.560. Thus, one might conclude that IDOT rule 761—615.36 is inconsistent with section 321.560 and therefore inapplicable. *See* Iowa Admin. Code r. 761—615.36 ("Unless otherwise specified by statute . . . .").

However, a thirty-day waiting period is equal to the time period allowed by the Iowa Code for a person to seek judicial review of a finding by the IDOT that a person is a habitual offender. *See* Iowa Code § 17A.19(3). Therefore, one might also argue that the rule *aligns* with the statute by automatically staying the final decision of the IDOT for the thirty days pending judicial review. Iowa Code section 321.560 provides

two alternative commencement dates for the bar—"the date of the final decision of the [IDOT] under section 17A.19 or the date on which the district court upholds the final decision of the department, whichever occurs later." Iowa Code § 321.560(1), (2), (4). According to this view, if the person barred did not seek judicial review, the bar would begin on the thirtieth day after issuance of the IDOT's decision.

But in the end it doesn't matter. Mailing of notice is not an element of the crime. The crime consists of operating a vehicle during the period of time the defendant was barred from driving as a habitual offender. *See id.* § 321.561. That is what the State must prove. How the State gets there is the State's problem. After all, we don't require the State to introduce a copy of a marriage license in a domestic abuse assault case, a birth certificate in a statutory rape case, or a property deed in a trespass case. All the State needs is competent proof that the defendant was married to the victim (assuming the other circumstances of domestic abuse do not apply); that the victim was under a given age; or that the property was owned, leased, or lawfully possessed by another. *See State v. Williams*, 695 N.W.2d 23, 28 (Iowa 2005); *State v. Mitchell*, 568 N.W.2d 493, 499–500 (Iowa 1997); *State v. Garrett*, 516 N.W.2d 892, 895 (Iowa 1994).

The legislature could have made giving notice of the bar one of the elements of the crime. *See, e.g.*, Minn. Stat. Ann. § 171.24(2) (West, Westlaw through 2017 Reg. & 1st Spec. Sess.) ("A person is guilty of a misdemeanor if: (1) the person's driver's license or driving privilege has been revoked; (2) the person has been given notice of or reasonably should know of the revocation; and (3) the person disobeys the order by operating in this state any motor vehicle, the operation of which requires a driver's license, while the person's license or privilege is revoked.").

Instead, it enacted a "status crime" where the only elements are that the defendant was a habitual offender who operated a vehicle during the period of time his or her license was revoked. *See* Iowa Code § 321.561 ("It shall be unlawful for any person found to be a habitual offender to operate any motor vehicle in this state during the period of time specified in section 321.560 . . . .").

Williams relies on *State v. Green,* where we held that the state had to show that it had mailed a notice of suspension in order to prove that a suspension had occurred for purposes of a driving-under-suspension violation. 722 N.W.2d 650, 652 (Iowa 2006). *Green,* however, is distinguishable. There we could not "presume, based solely on the DOT's furnishing of a copy of notice found in its files that the notice was actually mailed." *Id.* Because the state failed to provide any other evidence that it had mailed notice, we found that the conviction for driving under suspension could not stand. *Id.* However, the opinion does not mention any independent proof that the driver's license had been suspended, such as an abstract of driving record or admissions made by the defendant. *See id.* The state therefore had to establish that it had mailed a notice of suspension in order to prove that a suspension had occurred, and the state failed to do so. *Id.*

We therefore hold, based on the manner in which the legislature has framed Iowa Code section 321.561 and our own precedent, that proof of mailing is not an essential element of the State's proof. Numerous other jurisdictions have reached similar conclusions. *Osborne v. District of Columbia,* 169 A.3d 876, 886 (D.C. 2017) (finding that proof of notice is required only "where a defendant claims that he or she did not receive notice of revocation and the evidence fairly raises the issue"); *Griffin v. State,* 692 S.E.2d 7, 8 (Ga. Ct. App. 2010) (finding the

defendant's "statement to the officer that his license was suspended" to be sufficient evidence that it was in fact suspended); *People v. Gonzalez*, No. 1–14–0907, 2016 WL 1274017, at *4 (Ill. App. Ct. Mar. 30, 2016) ("[T]he evidence was sufficient to sustain defendant's conviction for [driving while his license was suspended (DWLS)]. Officer Silva and defendant both testified that defendant was driving on April 10, 2013, and the certified driving abstract indicated that his license was subject to two suspensions on that date. The State established each element of DWLS, irrespective of whether defendant had notice that either suspension was in effect." (Citation omitted.)); *State v. Keihn*, 542 N.E.2d 963, 968–69 (Ind. 1989) (finding that even though Indiana requires proof of the defendant's knowledge that his or her license was suspended, the defendant's admission can be sufficient and evidence is not insufficient simply because of "the absence of proof that a notice of suspension was sent in due course by the Bureau of Motor Vehicles"); *State v. Soto*, 162 P.3d 187, 198 (N.M. Ct. App. 2007) ("Defendant's admission that his driver's license was revoked provided evidence, apart from the challenged record, sufficient to prove this element of the crime charged."), *overruled on other grounds by State v. Tollardo*, 275 P.3d 110, 121 (N.M. 2012), *as recognized by State v. Hale*, No. 34,125, 2016 WL 6561264 (N.M. Ct. App. Sept. 15, 2016); *State v. Mecham*, 331 P.3d 80, 89 (Wash. Ct. App. 2014) ("The elements of first degree DWLS are: (1) the defendant was driving in Washington; (2) his privilege to drive was revoked at the time; and (3) the revocation was based on his status as a habitual traffic offender. . . . [T]he fact of mailing is not an element of the crime to be proved at trial. Rather, mailing goes to whether the license revocation complied with due process.").

### V. Conclusion.

For the foregoing reasons, we affirm the judgment of the district court and the decision of the court of appeals.

**DECISION OF COURT OF APPEALS AND JUDGMENT OF DISTRICT COURT AFFIRMED.**

All justices concur except Wiggins and Appel, JJ., who dissent, and Hecht, J., who takes no part.

**WIGGINS, Justice (dissenting).**

The majority holds the State is not required to prove it mailed notice to Deshaun Williams as an element of the offense of driving while barred. I dissent based upon my analysis of the statutory scheme and due process considerations.

I begin my analysis with *State v. Green,* 722 N.W.2d 650 (Iowa 2006). There we addressed the issue of whether the Iowa Department of Transportation (IDOT) established it had sent notice—"the condition precedent to agency action"—to the licensee prior to suspending her license. *Id.* at 651. We first examined the general notice requirement codified in Iowa Code section 321.16 (2003), which focuses on the sending of notices. *Id.* at 651–52. This section provides,

> When the department is authorized or required to give notice under this chapter or any other law regulating the operation of vehicles, unless a different method of giving notice is expressly prescribed, notice shall be given either by personal delivery to the person to be so notified or by personal service in the manner of original notice . . . or by first class mail addressed to the person at the address shown in the records of the department . . . .

*Id.* (quoting Iowa Code § 321.16).

We then examined the suspension provision codified in section 321.210(1), which focuses on the receipt of notices. *Id.* at 652. This section authorizes the IDOT to suspend a driver's license after "the licensee . . . received thirty days' advance notice of the effective date of the suspension." *Id.* (quoting Iowa Code § 321.210(1)).

Additionally, we reasoned the saving language of section 321.16 "clearly contemplates that the notice had been 'mailed by first class mail.'" *Id.* at 652. The saving language states,

> A person's . . . claim of failure to receive a notice of revocation, suspension, or bar mailed by first class mail to the person's last known address shall not be a defense to a charge of driving while suspended, revoked, denied, or barred.

*Id.* (quoting Iowa Code § 321.16).

We held proof of mailing notice of the suspension is an element of the offense of driving while suspended. *See id.* Because the IDOT failed to show either by affidavit or a certified mail receipt that it had sent notice to the defendant, although it had furnished to the district court a copy of a notice letter found in its internal files, we concluded "there was no proof that the notice was in fact mailed." *Id.*

To determine if the majority is correct, the majority must interpret Iowa Code sections 321.555 (2015), 321.556, and 321.560 in tandem with the administrative rules enacted by the IDOT. In interpreting a statute, we have stated,

> The goal of statutory construction is to determine legislative intent. We determine legislative intent from the words chosen by the legislature, not what it should or might have said. Absent a statutory definition or an established meaning in the law, words in the statute are given their ordinary and common meaning by considering the context within which they are used. Under the guise of construction, an interpreting body may not extend, enlarge[,] or otherwise change the meaning of a statute.

*Auen v. Alcoholic Beverages Div.*, 679 N.W.2d 586, 590 (Iowa 2004) (citations omitted). Additionally, we construe statutes so they are consistent with each other. *Sanon v. City of Pella*, 865 N.W.2d 506, 514 (Iowa 2015). Finally, "we should not construe a statute to make any part of it superfluous." *Petition of Chapman*, 890 N.W.2d 853, 857 (Iowa 2017).

My review of the habitual offender statutory provisions and accompanying administrative rules, taken together, does not support the

majority's premise that the effective date of the bar order begins from the actual date the IDOT enters its decision.

I begin with the Iowa Code. The IDOT conducts a habitual offender proceeding pursuant to section 321.556. *See* Iowa Code § 321.556. If the IDOT reviews a person's record and determines the person is a habitual offender as defined in section 321.555, "the department shall immediately notify the person in writing and afford the licensee an opportunity for a hearing." *Id.* § 321.556(1). Once it determines the person is a habitual offender, "the department shall issue an order prohibiting the person from operating a motor vehicle on the highways of this state for the period specified in section 321.560." *Id.* § 321.556(4).

For a person barred as a habitual offender under section 321.555(1) or (2), the period of the bar begins "from the date of the final decision of the department under section 17A.19 or the date on which the district court upholds the final decision of the department, *whichever occurs later.*" *Id.* § 321.560(1)–(2) (emphasis added). For a person determined to be a habitual offender while his or her license is already revoked for being a habitual offender, the period of the revocation begins "on the date of the final decision of the department under section 17A.19 or the date on which the district court upholds the final decision of the department, *whichever occurs later.*" *Id.* § 321.560(4) (emphasis added).

The administrative rules require the IDOT to "send a notice of . . . bar by first-class mail to the person's mailing address as shown on departmental records." Iowa Admin. Code r. 761—615.37(1). This rule is consistent with section 321.16. The rules also provide, "Unless otherwise specified by statute or rule, a suspension, revocation, disqualification or bar shall begin 30 days after the department's notice

of suspension, revocation, disqualification or bar is served." *Id.* r. 761—615.36.

The thirty-day waiting period is important under the statutory scheme. This thirty-day waiting period is equal to the same time period allowed by the Iowa Code for a person to seek judicial review of a finding by the IDOT that a person is a habitual offender. *See* Iowa Code § 17A.19(3).

If a person seeks judicial review of the IDOT's final decision, the effective date of the person's bar begins "from . . . the date on which the district court upholds the final decision of the department, whichever occurs later." *Id.* § 321.560(1), (2), (4). The majority ignores the language "whichever occurs later" in reaching its conclusion, thereby rendering the habitual offender provisions containing this language superfluous. *See Rojas v. Pine Ridge Farms, L.L.C.*, 779 N.W.2d 223, 231 (Iowa 2010) ("[T]he legislature included all parts of the statute for a purpose, so we will avoid reading the statute in a way that would make any portion of it redundant or irrelevant."). Section 321.560 automatically stays the final decision of the IDOT pending judicial review.

The only way the statutory scheme makes sense is if we give full effect to the habitual offender provisions as a whole and the administrative rules the IDOT relies on to implement the habitual offender provisions. *See Iowa Nat. Res. Council v. Van Zee*, 261 Iowa 1287, 1290, 158 N.W.2d 111, 114 (1968) ("It is a cardinal principle of statutory construction that the intent of the legislature is to be gleaned from the statute read as a whole[] and not from any section or portion thereof taken piecemeal."); *see also State v. Connor*, 292 N.W.2d 682, 686 (Iowa 1980) (applying the canon of statutory construction that "a

construction resulting in unreasonableness as well as absurd consequences will be avoided" (quoting *Janson v. Fulton,* 162 N.W.2d 438, 442 (Iowa 1968))).

To give effect to the words "whichever occurs later" in section 321.560, the thirty-day delay described in rule 761—615.36 is necessary to carry out the statutory scheme. If we ignore the thirty-day delay, under the reasoning of the majority, every bar of a habitual offender would begin literally on the actual date the IDOT enters its decision, regardless of when the IDOT mails its decision and regardless of due process concerns. The majority renders the phrase "from . . . the date on which the district court upholds the final decision of the department, whichever occurs later" superfluous and unnecessary because the actual date of the IDOT's final decision, without the thirty-day delay, would always occur before "the date on which the district court upholds the final decision."

If the person barred does not seek judicial review, the bar would begin on the thirtieth day from the date of the final decision. The thirty-day delay built into the start date of the bar gives a person an *opportunity* to ask for judicial review. It does not matter if the person actually avails him or herself of the opportunity. Thus, similar to a suspension under *Green,* the bar will not begin until a person has had the opportunity to exhaust all of his or her legal remedies, short of appeal to this court.

The majority finds section 321.560 of the Iowa Code supersedes rule 761—615.36 of the Iowa Administrative Code. This is wrong. I acknowledge section 321.560 also provides "from the date of the final decision of the department under section 17A.19." Iowa Code § 321.560(1), (2), (4). However, the majority fails to flesh out what "the

date of the final decision" means. I examine an instructive case that employed a due-process analysis to conclude the Iowa State Board of Tax Review "issues" a decision when the board mails it, and the date of mailing starts the thirty-day appeals period. *Purethane, Inc. v. Iowa State Bd. of Tax Review*, 498 N.W.2d 706, 710 (Iowa 1993).

In *Purethane, Inc.*, we stated the Iowa Code provided for a thirty-day appeals period to file a protest from a sales and use tax assessment. *Id.* at 707–08. The board did not mail its November 28 decision until December 11 by certified mail. *Id.* at 708.

In resolving the question of when the board issued its final order to determine the appeal period, we stated,

> In the absence of a file or entry system by which the public and parties to a controversy before the board of tax review can learn of the board's decision, due process requires the statutory appeal period begins to run when the board decision is officially made available as a public record.
>
> . . . .
>
> . . . [T]he correct date which the board's order "issued" for purposes of determining the statutory appeal period is the date in which the order is put forth to the public and parties. Absent board rules [that] make decisions public by filing and entry, *this date means the date the order is mailed by certified mail. Beginning the appeal period on the date of certified mailing does not violate due process.*

*Id.* at 710 (emphasis added).

I agree with this analysis and apply it to Williams's case because the relevant habitual offender statutory provisions involve the date of the IDOT's final decision. Accordingly, the date of the IDOT's final decision is when the IDOT issues it by mailing notice of a licensee's barred status to the licensee. The date of mailing therefore commences the thirty-day period to file a petition for judicial review. My conclusion, which honors

the principles of due process, shows that rule 761—615.36 is consistent with section 321.560.

Based on the foregoing, under the statutory scheme created by the habitual offender provisions and supplemented by the administrative rules, the IDOT must mail notice of the bar to the licensee. This construction makes procedures under the habitual offender provisions similar to those under the suspension provisions in *Green*. Therefore, the State must prove it sent notice to Williams as an element of the offense of driving while barred.[2]

Additionally, I find *State v. Cook*, 565 N.W.2d 611 (Iowa 1997) (per curiam), inapplicable to the analysis. The majority reasoned *Cook* precludes a contrary conclusion because *Cook* did not identify proof of mailing notice as an element to the offense of driving while barred. In *Cook*, we held the district court did not err in giving the following jury instruction: "(1) [The defendant] operated a motor vehicle on August 15, 1995, and (2) on that date, his privilege to operate a motor vehicle was barred as an habitual offender." 565 N.W.2d at 613. However, *Cook* involved an ineffective-assistance-of-counsel claim in which the defendant argued his counsel should have objected to the trial information concerning his habitual offender status because it was prejudicial. *Id.* We held habitual offender status was an essential element of the crime and therefore the state was required to offer proof of such status. *Id.* at 615. In other words, *Cook* is not applicable to Williams's insufficiency-of-the-evidence claim because it simply does not

---

[2]Under our prior decision, if the IDOT prepares a certificate of mailing contemporaneously with mailing and keeps the certificate in the regular course of business, it is nontestimonial, and its admissibility would not violate the Confrontation Clause. *See State v. Kennedy*, 846 N.W.2d 517, 526 (Iowa 2014). However, if the IDOT prepares a certificate of mailing for the purpose of trial, it is testimonial. *See id.*

address the necessary and required elements of proving the offense of driving while barred.

Finally, I would find *State v. Kennedy*, 846 N.W.2d 517 (Iowa 2014), also inapplicable to the analysis. *Kennedy* involved a license revocation, not a license bar as a habitual offender. In that case, the defendant raised a Confrontation Clause issue, claiming the state improperly introduced a certified abstract of his driving record. 846 N.W.2d at 521. The state had revoked the defendant's license three different times, once for OWI test refusal, once for OWI test failure, and once for OWI. *Id.* at 521–22. The necessity of mailing the revocation notice was not at issue in *Kennedy*. The only issue raised and decided by us was whether there was competent proof in the record that the defendant drove his vehicle after the effective date of the revocation and before the reinstatement of his license. *Id.* at 522. The defendant never raised the issue that proof of mailing was required.

The difference between *Kennedy* and the present case is that when the State revokes a license for OWI, the revocation takes effect immediately upon conviction. *Id.* On the other hand, when the State bars a habitual offender's license, mailing is an essential element of the offense because mailing triggers the appeal process and the effective date of the bar. Additionally, in *Kennedy*, the criminal conviction satisfies any due process concerns regarding the revocation. A proceeding to bar a person's license for being a habitual offender is consistent with our analysis in *Green*.

Based on the foregoing, I would hold the proper marshaling instruction consists of two elements: (1) operating a vehicle and (2) operating with a barred license. The second element has two subparts. First, the State must prove the defendant's license was barred

on the date in question. Second, the State must present proof the IDOT properly mailed notice to the defendant. However, the State is not required to prove knowledge on the part of the defendant. *State v. Carmer*, 465 N.W.2d 303, 304 (Iowa Ct. App. 1990) (holding section 321.561 does not require knowledge as an element of the offense of driving while barred). Moreover, "[a] person's refusal to accept or a claim of failure to receive a notice of . . . bar mailed by first class mail to the person's last known address shall not be a defense to a charge of driving while . . . barred." Iowa Code § 321.16.

It is undisputed the State did not introduce into evidence—either an affidavit of mailing or certified mail receipt—showing the IDOT properly mailed notice to Williams of the bar to his last known address. Thus, the State failed to prove beyond a reasonable doubt Williams was driving while barred. Based on the State's failure to prove the mailing of notice, I would not uphold the jury's verdict on the driving-while-barred conviction.

Appel, J., joins this dissent.