# IN THE COURT OF APPEALS OF IOWA

No. 18-0365
Filed May 15, 2019

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**ROBERT EARL RIVERS JR.,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Webster County, Angela L. Doyle, District Associate Judge.

Robert Rivers Jr. appeals his convictions of eluding and driving while barred. **AFFIRMED.**

Amy Moore of Mid-Iowa Mediation and Law PLLC, Ames, until withdrawal, and then John Dirks of Dirks Law Firm, Ames, for appellant.

Thomas J. Miller, Attorney General, and Louis S. Sloven, Assistant Attorney General, for appellee.

Considered by Doyle, P.J., and Tabor and Mullins, JJ.

**MULLINS, Judge.**

Robert Rivers Jr. appeals his convictions of eluding and driving while barred. He argues (1) the district court's denial of his *Batson*[1] challenge violated his right to equal protection under the federal constitution, (2) the use of peremptory strikes under Iowa Rule of Criminal Procedure 2.18 violates due process and the right to an impartial jury under the state and federal constitutions, (3) the State failed to provide sufficient evidence to support the charges and the court therefore erred in denying his motions for judgment of acquittal,[2] and (4) his counsel rendered ineffective assistance in failing to object to testimony and evidence derived from the forensic examination of a cellular phone.

## I.  Background Facts and Proceedings

Upon the evidence presented at trial, a rational jury could make the following factual findings. At approximately 2:00 a.m. on June 3, 2017, Officer Steck of the Fort Dodge Police Department was on routine patrol when he came into contact with a white Pontiac SUV. Steck is familiar with Rivers from previous encounters, and Steck identified Rivers as the driver of the Pontiac. Steck contacted Officer Burns concerning the status of Rivers's driver's license. Burns

---

[1] *See generally Batson v. Kentucky*, 476 U.S. 79 (1986).

[2] In conjunction with his sufficiency-of-the-evidence challenge, Rivers also contends the court abused its discretion in denying his motion for a new trial on weight-of-the-evidence grounds. Although Rivers provides boilerplate citations to legal authorities concerning the weight of the evidence, he provides no free-standing substantive argument concerning the weight of the evidence and only variously argues "[t]he jury's verdict was not supported by the weight of the evidence." We deem the weight-of-the-evidence argument waived. *See, e.g.,* Iowa R. App. P. 6.903(2)(g)(3); *Hyler v. Garner*, 548 N.W.2d 864, 876 (Iowa 1996); *Inghram v. Dairyland Mut. Ins. Co.*, 215 N.W.2d 239, 240 (Iowa 1974). In any event, upon our review of the evidence, we find this is not one of those "exceptional cases in which the evidence preponderates heavily against the verdict." *See State v. Reeves*, 670 N.W.2d 199, 202 (Iowa 2003) (quoting *State v. Ellis*, 578 N.W.2d 655, 659 (Iowa 1998)).

is also familiar with Rivers from "prior dealings." Burns was in the area, so he proceeded to the vicinity of Steck's location. Burns located the Pontiac and began following it, after which it pulled into the parking lot of a local bar. Steck also saw the Pontiac near the bar, and he again identified Rivers as the driver at the time. Rivers parked in the bar's parking lot. Burns verified through dispatch that Rivers's driver's license was barred. The officers situated themselves nearby and waited for Rivers to leave the bar. About five minutes later, both officers observed the Pontiac leave the bar. Both officers were able to again identify Rivers as the driver. Burns attempted to initiate a traffic stop, after which Rivers led Burns and Steck on a high-speed pursuit. Rivers eventually ran his vehicle into a house, but he was able to flee the scene on foot. Officers were not able to locate him in the area.

Subsequent investigation revealed the Pontiac was registered to Rivers's sister, Dominick. Officers located a cellular phone on the driver's side floorboard of the Pontiac. A search warrant was obtained authorizing forensic analysis of the cell phone. A Cellebrite program was used to extract data from the phone, which revealed a google email account was associated with the phone. In response to a subpoena, Google identified Rivers as the owner of the account. The phone number of the phone was also identified. Rivers provided the same phone number as his contact information to his community treatment coordinator with the department of correctional services. The phone's text messages were also extracted. One message received by the phone less than a day before the pursuit was addressed to "Rob." Dominick, testified on behalf of the defense that the phone found in the vehicle belonged to her son. On cross-examination, she conceded none of her children go by the name of Rob.

A representative of the department of transportation (DOT) testified Rivers's driver's license was barred on the date in question. When asked on cross-examination if she could provide records showing Rivers was mailed a notice concerning the barred status of his drivers' license, the representative responded in the affirmative and provided defense counsel with the certified barment and proof of mailing.[3]

Rivers was charged by trial information with aggravated eluding and driving while barred in connection with the foregoing events. A trial was held in December 2017. During jury selection, defense counsel lodged a *Batson* challenge as to the State's striking of a juror, the only African American seated on the jury panel, and additionally argued "discretionary strikes . . . are unconstitutional" under the state and federal constitutions. The court overruled both objections. The court also overruled Rivers's motions for judgment of acquittal made during trial. A jury ultimately found Rivers guilty as charged.

Rivers filed a combined motion for new trial or in arrest of judgment arguing (1) the verdict was contrary to the weight of the evidence, (2) the court erred in denying his motions for judgment of acquittal, (3) the court erred in overruling his *Batson* challenge, and (4) the use of peremptory challenges violated his rights to a fair trial and due process. The court denied the motion. Rivers appealed following the imposition of sentence.

---

[3] Neither of these documents were admitted into evidence, but defense counsel discontinued questioning the witness after reviewing the documents.

## II.    *Batson* Challenge and Peremptory Strikes

Prior to trial, the court and parties met concerning jury selection.  The parties agreed the jury panel would consist of twenty-three individuals, with the last three being prospective alternate jurors, and each party would be entitled to four peremptory strikes to be used as to the first twenty prospective jurors, and then each party could use a fifth strike for one of the three potential alternate jurors, resulting in a petit jury of twelve principal jurors and one alternate.  *See* Iowa R. Crim. P. 2.18(1), (9), (15)(a).  At the outset, juror 11 was excused for cause and replaced by juror 24.  The prosecutor then surveyed the jury concerning whether they knew anyone involved in the case, the defendant, State's witnesses, attorneys, or the presiding judge.  A number of the jurors noted their familiarity with the prosecutors, presiding judge, and one State's witness, but all such jurors indicated such familiarity would not hinder their ability to consider the case impartially.[4]  Thereafter, juror 13 was stricken for cause and was replaced by juror 25, who is African American.  When juror 25 joined the prospective panel, the prosecutor inquired whether he knew anyone involved in the case.  Juror 25 responded in the affirmative, noting he knew Rivers and his family, specifying he

---

[4] Specifically, juror 1 noted she thought she met the prosecutors through her husband, an attorney, but confirmed such would not hinder her impartiality.  Juror 6 acknowledged he was familiar with the prosecutors, the judge, and one of the testifying officers, but noted such familiarity would not have any effect on his review of the case.  Juror 18 noted his cousin was employed with the county attorney's office, but such would not result in any bias in relation to the case.  Jurors 8, 10 and 20 confirmed they were familiar with the presiding judge, but acknowledged it would not affect their ability to consider the case fairly.  None of the initial jurors were familiar with Rivers, defense counsel, or the remaining witnesses.  Juror 21 later identified her husband is a chaplain for law enforcement.  During the defense's voir dire, juror 17 noted she was familiar with defense counsel's wife, as she represented the juror's son's ex-wife in dissolution proceedings.  None of the potential jurors were familiar with the witnesses for the defense.

is a friend of the family. Juror 25 responded in the negative when asked whether his relationship to Rivers and his family "would keep him from being fair and impartial in deciding the case."

Both sides ultimately passed the jury for cause and proceeded to exercise their strikes under Iowa Rule of Criminal Procedure 2.18(9). The State struck juror 25 for its third strike, immediately after which defense counsel requested a conference outside the presence of the jury. During the ensuing conference, defense counsel lodged a *Batson* challenge as to the State's strike of juror 25, the only African American person seated on the jury panel, and additionally argued "discretionary strikes . . . are unconstitutional" as a violation of due process under the state and federal constitutions. Counsel specifically accused the State of striking juror 25 simply "because he is black." The State responded the strike had nothing to do with race, but was based on the juror's statement "that he has a relationship with the defendant and his family."

Thereafter, in support of his prima facie case of a *Batson* violation, defense counsel simply argued, "we have one black juror, that black juror was stricken." The State responded by reasserting juror 25 was struck due to his relationship with Rivers and his family, and added that Rivers intended to call his sister, another person the juror would be familiar with, as a witness. The State argued it "would make that strike in every single jury trial, regardless of the juror's race and regardless of the defendant's race."

The court rejected the argument that the use of peremptory strikes amounts to a constitutional violation. As to the *Batson* challenge, the court found Rivers

failed to establish a prima facie case for a violation or, alternatively, the State provided a sufficient race-neutral reason for the strike that was not pretextual.

On appeal, Rivers, who is African American, argues the States peremptory strike of juror 25, the only African American person on the jury panel, violated his right to equal protection under the federal constitution, and the district court erred in not concluding the same. Appellate review of such a claim is de novo. *See State v. Keys*, 535 N.W.2d 783, 785 (Iowa Ct. App. 1995).

"In *Batson*, the United States Supreme Court held that the equal protection clause of the fourteenth amendment prevents a prosecutor from using peremptory strikes to challenge potential jurors 'solely on account of their race.'" *State v. Griffin*, 564 N.W.2d 370, 375 (Iowa 1997) (quoting *Batson*, 476 U.S. at 89); *accord Foster v. Chatman*, 136 S. Ct. 1737, 1747 (2016) ("The 'Constitution forbids striking even a single prospective juror for a discriminatory purpose.'" (quoting *Snyder v. Louisiana*, 552 U.S. 472, 478 (2008))); *State v. Mootz*, 808 N.W.2d 207, 215 (Iowa 2012) (noting *Batson* prohibits "purposeful racial discrimination" through use of peremptory strikes). The Court has provided a three-step framework for ascertaining when a peremptory strike is discriminatory:

> First, a defendant must make a prima facie showing that a peremptory challenge has been exercised on the basis of race; second, if that showing has been made, the prosecution must offer a race-neutral basis for striking the juror in question; and third, in light of the parties' submissions, the trial court must determine whether the defendant has shown purposeful discrimination.

*Foster*, 136 S. Ct. at 1747 (quoting *Snyder*, 552 U.S. at 476–77).

A defendant may "establish a prima facie case by showing that the prosecution's use of its peremptory challenges and any other relevant

circumstances raise an inference that the government excluded prospective jurors on the basis of their race." *State v. Knox*, 464 N.W.2d 445, 448 (Iowa 1990). In support of his prima facie case, Rivers argues on appeal that discrimination can be inferred because juror 25 was the only African American person on the panel, he stated he could serve impartially, and the State did not strike other jurors who were familiar with other people involved in the case. "In determining whether a defendant has established the requisite showing of purposeful discrimination, the court should consider all relevant circumstances including, but not limited to, a pattern of strikes against black jurors, as well as the prosecutor's questions and statements during voir dire." *Id.*

Upon our de novo review of the record, we agree with the district court that the circumstances do not give rise to an inference of racial discrimination in the State's use of peremptory challenges. The very first question the State asked the prospective jurors during voir dire was as follows: "[D]oes anybody have any knowledge or outside knowledge before coming into the courtroom today about Robert Rivers Jr. or the case in the courtroom today?" The fact that this was the State's first inquiry makes quite clear that the State's principal concern was excluding jurors familiar with the defendant or the facts of the case. At the end of the day, juror 25 was the only juror falling in this category. We find the circumstances here do not give rise to an inference of discrimination, and Rivers therefore failed to establish a prima facie case to support his *Batson* challenge.

On appeal, Rivers does not challenge the sufficiency of the State's race-neutral reason. To the extent he challenges the denial of his challenge on the third *Batson* step, we conclude Rivers failed to meet his burden to show the "stated

reason constitutes a pretext for racial discrimination." *See Mootz*, 808 N.W.2d at 219 (quoting *Hernandez v. New York*, 500 U.S. 352, 363 (1991)).

Next, Rivers argues the use of peremptory strikes amounts to violations of his constitutional rights to due process and a fair trial. As to this argument, Rivers essentially argues *Batson* is a "test without teeth" and this court "should impose more stringent protections of his right to due process and a fair and impartial jury under the Iowa Constitution than are afforded under the United States Constitution and *Batson*." Upon of our review of the argument, we agree with the State that "Rivers has failed to demonstrate that nebulous concerns about *Batson* warrant abandoning Iowa's traditional approach to peremptory challenges, which enable *all* litigants to protect themselves from unspoken bias that may infect deliberations." Other than his all-encompassing argument that the peremptory-strike system is unconstitutional, Rivers has simply failed to provide us with a specific or concrete reason why or how it is so, or how the district court erred in rejecting his vague claim below. *See In re C.B.*, 611 N.W.2d 489, (Iowa 2000) ("A broad, all encompassing argument is insufficient to identify error in cases of de novo review."). We affirm the district court's rulings relative to jury selection and peremptory strikes.

## III.     Sufficiency of the Evidence

Following the State's case-in-chief, Rivers moved for judgment of acquittal. As to both counts, he argued there was insufficient evidence to show he was the driver of the Pontiac on the night in question. As to the driving-while-barred charge, he argued there was insufficient evidence to prove the DOT mailed him notice of his barment. The court denied the motion. Rivers renewed the motion on the

same grounds following the presentation of the evidence for the defense. The motion was likewise overruled. On appeal, Rivers echoes the arguments he raised in the district court, contending the evidence was insufficient to show he was the driver of the vehicle in question, or that he had notice of the barred status of his driver's license.

Challenges to the sufficiency of the evidence are reviewed for corrections of errors at law. *State v. Kelso-Christy*, 911 N.W.2d 663, 666 (Iowa 2018). The court views "the evidence 'in the light most favorable to the State, including all reasonable inferences that may be fairly drawn from the evidence.'" *State v. Ortiz*, 905 N.W.2d 174, 180 (Iowa 2017) (quoting *State v. Huser*, 894 N.W.2d 472, 490 (Iowa 2017)). All evidence is considered, not just that of an inculpatory nature. *See Huser*, 894 N.W.2d at 490. "[W]e will uphold a verdict if substantial evidence supports it." *State v. Wickes*, 910 N.W.2d 554, 563 (Iowa 2018) (quoting *State v. Ramirez*, 895 N.W.2d 884, 890 (Iowa 2017)). "Evidence is substantial if, 'when viewed in the light most favorable to the State, it can convince a rational jury that the defendant is guilty beyond a reasonable doubt.'" *Id.* (quoting *Ramirez*, 895 N.W.2d at 890). Evidence is not rendered insubstantial merely because it might support a different conclusion; the only question is whether the evidence supports the finding actually made. *See Brokaw v. Winfield-Mt. Union Cmty. Sch. Dist.*, 788 N.W.2d 386, 393 (Iowa 2010). In considering a sufficiency-of-the-evidence challenge, "[i]t is not the province of the court . . . to resolve conflicts in the evidence, to pass upon the credibility of witnesses, to determine the plausibility of explanations, or to weigh the evidence; such matters are for the [factfinder]." *State*

*v. Musser*, 721 N.W.2d 758, 761 (Iowa 2006) (quoting *State v. Williams*, 695 N.W.2d 23, 28 (Iowa 2005)).

The State bears the burden of proving every element of a charged offense. *State v. Armstrong*, 787 N.W.2d 472, 475 (Iowa Ct. App. 2010). Rivers does not challenge the marshalling instructions employed at trial for the charged crimes. As such, the instructions serve as the law of the case for purposes of reviewing the sufficiency of the evidence. *See State v. Banes*, 910 N.W.2d 634, 639 (Iowa Ct. App. 2018). As to both counts, Rivers argues the evidence was insufficient to show he was the driver of the suspect vehicle on the night in question. The jury was instructed the State was required to prove Rivers was driving or operated a vehicle on the night in question. As to identity, Rivers complains the evidence presented by the State was wholly circumstantial, the officers' eyewitness identifications of him driving are not credible, and the evidence was insufficient to show the phone found in the vehicle belonged to him.

Viewing the evidence in a light most favorable to the State and verdict, as we must, we find the evidence was sufficient to convince a rational jury that Rivers was the driver of the Pontiac on the night in question. First, the jury was instructed that "[t]he law makes no distinction between direct evidence and circumstantial evidence." *Accord Kelso-Christy*, 911 N.W.2d at 668 ("Direct and circumstantial evidence are equally probative." (citation omitted)). Both officers, who were familiar with Rivers, identified him as the driver. Likewise, the cell phone found in the car was linked to Rivers through its google account, a recent text message contained in the phone, and the fact that Rivers provided the phone's number as his contact information to a state official. The evidence supports the jury's verdict.

As to the driving-while-barred charge, Rivers argues there "was insufficient evidence that [he] was either provided notice of his barred status by the [DOT] or that he had actual knowledge of his barred status." As noted, Rivers did not and does not challenge the marshalling instruction provided to the jury for driving while barred, and it therefore serves as the law of the case for purposes of reviewing the sufficiency of the evidence. *See Banes*, 910 N.W.2d at 639. The instruction did not require the State to prove Rivers had notice or knowledge of the status of his license. Instead, it only required the State to prove Rivers's license "was barred at the time of operation." The evidence was clearly sufficient to support the State's establishment of the instructed element, and Rivers appears to concede as much. In any event, our supreme court recently clarified notice to a defendant of the barred status of his driver's license is not an essential element of driving while barred. *See State v. Williams*, 910 N.W.2d 586, 594 (Iowa 2018). We affirm the denial of Rivers's motions for judgment of acquittal.

## IV.    Ineffective Assistance of Counsel

Finally, Rivers argues his trial counsel rendered ineffective assistance in failing to object to evidence admitted concerning the forensic examination of the cellular phone found in the vehicle. Ineffective-assistance-of-counsel claims are immune from error-preservation defects. *See State v. Fountain*, 786 N.W.2d 260, 263 (Iowa 2010). We review such claims de novo. *State v. Albright*, 925 N.W.2d 144, 151 (Iowa 2019). Rivers "must establish by a preponderance of the evidence that '(1) his trial counsel failed to perform an essential duty, and (2) this failure resulted in prejudice.'" *State v. Lopez*, 907 N.W.2d 112, 116 (Iowa 2018) (quoting *State v. Harris*, 891 N.W.2d 182, 185 (Iowa 2017)); *accord Strickland v.*

*Washington*, 466 U.S. 668, 687 (1984). We "may consider either the prejudice prong or breach of duty first, and failure to find either one will preclude relief." *State v. McNeal*, 897 N.W.2d 697, 703 (Iowa 2017) (quoting *State v. Lopez*, 872 N.W.2d 159, 169 (Iowa 2015)).

Rivers essentially argues counsel should have objected because the State failed to "establish a chain of custody justifying the admission of evidence . . . making it reasonably probable that tampering, substitution or alteration of evidence did not occur." He further argues "the contents of cellular phones are very susceptible to alteration, as the data they contain are accessible as long as the phone remains connected to [a] cellular network or the internet."

Upon our de novo review of the record, even assuming counsel could have successfully prevented the evidence from being admitted, we find no "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Krogmann v. State*, 914 N.W.2d 293, 313 (Iowa 2018) (quoting *Strickland*, 466 U.S. at 694). Even ignoring the entirety of the cell phone evidence, we find the jury would have still had sufficient evidence upon which to conclude Rivers was the driver of the vehicle on the night in question, and we have no reason to believe it would not have done so. The evidence, although largely circumstantial, was overwhelming and generally unchallenged. Consequently, Rivers was not prejudiced by his counsel's alleged breach, and Rivers is not entitled to relief on his claim. *See McNeal*, 897 N.W.2d 697 at 703.

## V. Conclusion

We affirm Rivers's convictions of eluding and driving while barred.

**AFFIRMED.**